**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION AT LEXINGTON**

*ELECTRONICALLY FILED*

*FILED UNDER SEAL*

CRIMINAL NO. 19-37-DCR

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| PLAINTIFF | ) | |
| | ) | **DEFENDANT'S SEALED MOTION FOR** |
| | ) | **RELIEF PURSUANT TO 18 U.S.C. §** |
| *v.* | ) | **3553(a) AND SENTENCING** |
| | ) | **MEMORANDUM** |
| | ) | |
| JAMES E. WOOSLEY, | ) | |
| | ) | |
| DEFENDANT | ) | |

Comes the Defendant, James E. Woosley, by counsel, and moves the Court, pursuant to its Sentencing Orders (DE 16 & 32) for relief under 18 U.S.C. § 3553(a) and submits this Sentencing Memorandum.  Mr. Woosley asks for a sentence that reflects the nature and circumstances of his crime and his history and characteristics, and that is sufficient but not greater than necessary to serve the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).  As grounds, Defendant states as follows:

On May 10, 2019, Mr. Woosley pled guilty to Count 2 of the Indictment, charging him with violating 18 U.S.C. § 2251(a) in producing sexually explicit visual depictions involving a minor child.  As part of his written Plea Agreement, the Government will move to dismiss the remaining production count and several child pornography counts against him. DE 15.  Mr. Woosley's crime is detailed in the Plea Agreement and PSR.  His actions are gravely serious and worthy of punishment.  He understands that he will spend a substantial amount of time in prison for these crimes.  Imprisonment will promote respect

for the law, deter him and others from acting similarly in the future, and provide a just punishment.

Mr. Woosley does not object to the Guideline offense level or criminal history category computations in the PSR. The offense level computation includes the three victims discussed below as relevant conduct. The grouping of these offenses and the pattern of activity enhancement under U.S.S.G. § 4B1.5(b)(1) increase the offense level by eight points. Even without these enhancements, his guideline offense level would be 43 after acceptance of responsibility. He has a criminal history score of zero. Under U.S.S.G. § 5G1.1(a), the guideline term of imprisonment becomes 360 months, the statutory maximum under 18 U.S.C. § 2251(e). Mr. Woosley seeks a variance from this guideline term under § 3553(a).

Mr. Woosley asks that in imposing a sentence of imprisonment, the Court examine his history and characteristics, the nature and circumstances of his particular offense, and the need to avoid sentencing disparities among defendants with similar records found guilty of similar conduct. *See* 18 U.S.C. § 3553(a)(1) and (6).

Much of the behavior exhibited in this case by Mr. Woosley was normalized for him at an early age. He was exposed to pornography by family members at age 5. PSR ¶ 90. His father and uncles took him to see X-rated movies and made pornography readily available to him. *Id.* ¶ 101. At age 7, he was subjected to sexual abuse by an older cousin. *Id.* ¶ 90. Sexual contact with older cousins continued until he was 15 years old. As a preteen, he was also sexually abused and sodomized by an adult uncle. *Id.* Mr. Woosley never related any of this to anyone, perhaps an indication of how normalized such behavior had become.

Into adulthood, Mr. Woosley developed an addiction to pornography.  When he began to have issues being physically intimate with his wife in 2017, he expanded the bounds of this addiction by seeking out more lascivious material believing it would help with his dysfunction.  He did not seek out child pornography for this issue, however, but as a means to get the material he wanted.  He knew that people providing the material operated in certain online forums, some of whom sought child pornography in return.  He received many images of child pornography from these groups as part of larger file batches.  Mr. Woosley admitted to KSP that he began receiving child porn in roughly July 2017.

Since his pretrial detention began, he has attended classes with Celebrate Recovery where he has learned to admit that he has an addiction.  Mr. Woosley knew what he did was wrong, but Celebrate Recovery helped him understand addiction and compulsion.  He used his family and a child in his care to create sexually exploitative videos.  Instead of seeing this for what it is, he rationalized it as a means to getting the material he wanted.  He is learning that his personal history with sexual abuse had normalized these criminal actions.  He understands it is no excuse and has taken and continues to take responsibility for those actions.

He admitted what he did to KSP when they questioned him in August 2018.  He followed up during a second interview when he recalled the images he took of the two minor boys.  He admittedly believed by talking to the authorities and sharing everything that it would "go easier" for him.  Unfortunately, for purposes of this sentencing, it is important to describe the nature and circumstances of this offense in some detail.  Mr. Woosley explained to the officers at that time that the incident with the boys began after

3

he bathed them.  One of the boys picked up his wife's vibrator from between a nightstand and the bed and began playing with it.  The incident then became more sinister when Mr. Woosley failed to recover it and instead rubbed it on the boys' legs and one of their bottoms.  He opportunistically took pictures of the vibrator near the boy's bottom.  Both boys were completely unclothed.  Importantly, he did not penetrate the boys with it, and did not perform any "sexual acts," as that term is defined in § 2246.  He previously explained to KSP that he had also surreptitiously taken videos of his twelve year old daughter in the shower and sent them to others.  She later told law enforcement that Mr. Woosley had never abused her.  All three victims are included in the PSR, although he was not charged here concerning his actions against his daughter.  The incident with the boys was the first and only time he had committed a sexual act.  In both incidents, Mr. Woosley described the online group as the motivating factor for committing such acts. There was pressure from the group to contribute or lose access.  He told authorities this had happened before when he failed to participate.  The photos of the boys were not shared, however.

Having participated in Celebrate Recovery, Mr. Woosley is hopeful that his continued treatment will give him the tools to avoid compromising his judgment with negative impulses.  The psychological evaluation completed in Miami supports his need for treatment, and further recommends treatment for alcohol abuse. DE 33; PSR ¶¶ 103a-d, 104.   Mr. Woosley asks that the Court include a recommendation that he participate in RDAP and the sex offender treatment program while incarcerated and continue treatment on supervised release.

A variance is requested from the guideline sentence of 30 years based on Mr. Woosley's personal history and the nature of his crime.  While his actions were abhorrent, Mr. Woosley is not close to the worst production offenders to come before this Court.  He does not have a long history of similar acts.  His acts were less abusive than others'.  Additionally, Mr. Woosley provided usernames, names, and email addresses for 7-10 people that belonged to the same group.  He allowed law enforcement to pose as him online to track down others in the group.  The discovery included 130 pages of subpoena return information for these individuals.  The status of any further investigation or prosecution of these individuals is unknown.  In examining those returns, it is apparent that Mr. Woosley was the least sophisticated of the group.  Some of the others appear to have masked their locations and used false account information.  While the fruit of his assistance is unknown to him, he should receive some benefit from aiding law enforcement.

A variance is also requested to avoid unwarranted sentencing disparities.  *See* 18 U.S.C. § 3553(a)(6).   This requirement is intended to avoid sentencing disparities nationwide.  *See* S. Rep. No. 98-225, at 41-45 (1983).  In FY 2018, the average sentence for offenders convicted of production of child pornography was 274 months.   U.S. Sentencing Comm'n Quick Facts, Sexual Abuse Offenders, Fiscal Year 2018, p. 1 (Oct. 2019) [Exh. 1].  This average sentence for production offenders was the lengthiest of all sexual abuse offenses, with the next highest average sentence being 187 months for those offenders traveling to engage in prohibited sexual conduct with a minor.  *Id.*  It was also reported that the majority (65.2%) of offenders were in Criminal History Category I, as is Mr. Woosley.

Numbers for 2018 from the Eastern District do not appear to be available or immediately discernible except through the raw sentencing data available from the Commission.   However, for the Eastern District of Kentucky in 2016, the average sentence under § 2G2.1 was 301 months.   Exh. 2 [Avg Sentence and Avg Guideline Minimum Comparison Over Time - EDKY].   In 2017, the average under § 2G2.1 was 289 months.  *Id.*  By comparison, the national averages for 2016 and 2017 were 257 months and 260 months, respectively.   Exh. 3 [Avg Sentence and Avg Guideline Minimum Comparison Over Time – Nat'l].   Nationally, the average sentence under § 2G2.1 was 52 months below the guideline range minimum in 2017.  *Id.*  In 2016, it was 43 months.  *Id.* For the Eastern District of Kentucky, the average sentence was the same as the guideline minimum range in 2017 and 29 months below the guideline minimum for 2016 under § 2G2.1.  Exh. 2.  Even so, the Eastern District averages do not reach the statutory max.

Apart from the Quick Facts cited above, the 2018 Sentencing Commission reports group all sexual abuse offenses together, making it difficult to discern actual numbers for each subcategory. The trends, however, are similar as reported above.  The Eastern District of Kentucky sentenced 12 sexual abuse offenders to an average of 279 months in 2018.  Table 7, Exh. 4 [U.S.S.C. Statistical Information Packet FY18 EDKY]. The national average was 191 months.  *Id.*  Forty-three percent of all sexual abuse cases in 2018 were for production.  Exh. 1.

The statistics from the U.S. Sentencing Commission indicate that there may be a sentencing disparity for production offenders sentenced under § 2G2.1 in the Eastern District of Kentucky.  For 2016 and 2017, the Eastern District's average sentences under

§ 2G2.1 exceeded the national average by a combined 73 months.  Sentencing disparities are shown in 2018 statistics grouping all sexual abuse offenders.

Importantly, the national numbers further support a significant variance below the guideline term in this case.  Nationally, district courts have varied below the guideline minimum by an average of 47 months from 2016-2017.  The Eastern District's average variance is about 15 months over the same period.  To avoid disparity, the Court should consider a variance below the guideline term on par with the recent national average.  Under § 3553(a)(6), the Court must consider these disparities among defendants guilty of similar conduct.

In performing this analysis, the Court should also consider the circumstances of this crime in comparison to others guilty of production for "unwarranted" disparity.  *See* 18 U.S.C. § 3553(a)(6) (disparities measured by conduct forming basis of conviction).  Admittedly, in a number of recent cases involving production, the Eastern District has imposed sentences of 360 months, the guideline term Mr. Woosley faces.  In examining the conduct in cases where 360 months was the sentence, a distinguishing fact is perhaps whether the offense involved a "sexual act."  In *United States v. Derringer*, No. 5:19-cr-56-DCR, DE 120, the defendant sexually assaulted the victim and used drugs to continue the assault, while producing a video of the sexual exploitation.  The sentence on each production count was 360 months.  In *United States v. Vandergriff*, No. 5:18-cr-103-JMH, DE 38 & 54, the defendant produced videos as she performed oral sex on her seven year old son.  She was sentenced to 360 months.  Similarly, in *United States v. Brock*, No. 2:17-cr-7-DLB, DE 43 & 70, the defendant was sentenced to 360 months for producing videos depicting a five year old nephew performing oral sex.  Finally, in *United States v.*

*Cooper*, No. 16-cr-1-DCR, DE 80, the defendant was sentenced to 360 months for producing videos of his daughter, and there was evidence he sexually assaulted her.

There are many other production cases far below this figure, however. In *United States v. Fosson*, No. 3:17-cr-1-GFVT, DE 24 & 40, the defendant used KIK messaging to exchange child pornography, including photos of his four-year old daughter. He was sentenced to 276 months. In *United States v. Snapp*, No. 5:15-cr-74-DCR, DE 25 & 27, the defendant was sentenced to 215 months after producing lewd videos of his step-daughter. There was evidence that he sexually assaulted her on multiple occasions. The *Vandergriff* co-defendant filmed the crimes and was sentenced to 240 months. Mr. Woosley's conduct is more similar to those without sexual acts or perhaps falls between this group and those having committed sexual acts. His actions constituted "sexual contact" rather than a "sexual act." 18 U.S.C. § 2246(2), (3). There was no penetration or touching of genitalia. He made contact with their buttocks. Also, Mr. Woosley did not actually distribute the photos of the boys. His conduct does not rise to the level of those for which a 360 month sentence was imposed. The difference in sentences between this group of offenders and that described above is likely due to the fact that the court recognizes the Guidelines do not distinguish these groups well, but should. *See* U.S.S.G. § 2G2.1(b)(2)(A) (two-level increase for sexual contact or sexual act). This is the role of § 3553(a)(6).

In light of the above sentencing factors, and considering Mr. Woosley's current age of 49, he asks that the Court consider a variance below the 360 month guideline term. Mr. Woosley has a family that has supported him despite his actions. He wants the opportunity to see his family again. The Sentencing Commission's reports on recidivism

indicate that there is a low rate for rearrest for Category I offenders starting with a base offense level of 32-43, and for offenders as they age.  Older offenders are less likely to recidivate after release compared with younger offenders with similar sentences.  Mr. Woosley expects his sentence to be substantial and believes that he will be into his 60s when released from prison.  The mandatory minimum is 15 years.  He asks that the Court consider sentencing him to 20 years.  This sentence is sufficient but not greater than necessary to accomplish the purposes of § 3553.

In placing Mr. Woosley, he asks that the Court consider the need for alcohol abuse treatment, sex offender treatment, and the travel requirements of his supporting family. Additionally, he has several medical issues that might impact placement, including prostate/bladder problems, blood pressure, and anxiety.  18 U.S.C. § 3553(a)(2)(D). Mr. Woosley asks that the Court recommend he be placed at FMC Lexington.

Regarding forfeiture, pursuant to the parties' agreement, DE 15, ¶ 9, the laptop identified as Item 2 in the Forfeiture Count of the Indictment should not be included in any forfeiture judgment.  The laptop belonged to Mr. Woosley's wife.  It was password-protected and Mr. Woosley did not have access to it.  The laptop was not found to contain any prohibited material.  The laptop was seized when KSP initially investigated pursuant to a search warrant covering electronic items.  He asks for an order requiring its return to his wife.

Regarding a fine, Mr. Woosley states that he is unable to pay a fine as he has no assets and has some debts.  He and his wife essentially lived paycheck to paycheck, despite both being fully employed.  He has been in custody since August 9, 2018, and in federal custody since March 27, 2019.  He has not been able to work and earn money

since then.  Additionally, a fine is unnecessary in light of the expectation that Mr. Woosley will spend a substantial amount of time in prison.  He will likely leave prison near or at an age where work in his prior field (laborer) will not be available to him.  Thus, even upon release he will lack the means to support himself and also pay a fine.  He has family that he intends to support as well, and any fine will cause those obligations to fall on others or the government.  Even with a schedule of payments, Mr. Woosley is likely unable to pay a fine in any amount and he asks that the Court waive imposition of a fine.

Finally, Mr. Woosley asks that any sentence imposed in this case be ordered to run concurrently with the anticipated sentence imposed by the Montgomery Circuit Court in Case Nos. 18-CR-327 and 18-CR 328.  *See* PSR ¶¶ 82-83.  The conduct forming the basis of those charges is relevant conduct to the pending federal charges.  The Montgomery Circuit Court has not dismissed those charges and it is anticipated that there will be a sentence imposed.  Accordingly, pursuant to U.S.S.G. § 5G1.3(c), this Court can order that the federal sentence run concurrently with the anticipated terms in those related cases.

Respectfully submitted,

GREEN CHESNUT & HUGHES, PLLC
201 East Main Street, Suite 800
Lexington, KY  40507
Tel:  (859) 475-1471
Fax: (859) 455-3332
jinman@gcandh.com

/s/ James M. Inman
JAMES M. INMAN

10

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, Tuesday, January 07, 2020, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send an electronic notice to all counsel of record in this matter.

/s/ James M. Inman
COUNSEL FOR DEFENDANT