1                     UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF KENTUCKY
2                     CENTRAL DIVISION AT LEXINGTON

3
                              - - -
4    UNITED STATES OF AMERICA,       .   Case No. 5:19-CR-0037
                                     .
5             Plaintiff,             .
                                     .   Lexington, Kentucky
6         - v -                      .
                                     .   Friday, January 17, 2020
7    JAMES E. WOOSLEY,               .   9:01 a.m.
                                     .
8             Defendants.            .
                              - - -
9
                  TRANSCRIPT OF SENTENCING PROCEEDINGS
10              BEFORE THE HONORABLE DANNY C. REEVES
                  UNITED STATES DISTRICT COURT JUDGE
11
                              - - -
12

13   For the United States:      DAVID A. MARYE, ESQ.
                                  Assistant U.S. Attorney
14                                United States Attorney's Office
                                  260 West Vine Street, Suite 300
15                                Lexington, Kentucky  40507

16   For the Defendant:          JAMES MICHAEL INMAN, ESQ.
                                  Green, Chestnut & Hughes, PLLC
17                                201 East Main Street, Suite 800
                                  Lexington, Kentucky  40507
18
     Court Reporter:             LINDA S. MULLEN, RDR, CRR
19                                Official Court Reporter
                                  101 Barr Street
20                                Lexington, Kentucky  40507

21

22   Proceedings recorded by mechanical stenography, transcript
     produced by computer.
23

24

25

1          (Proceedings in open court January 17, 2020, 9:01 a.m.)

2          THE COURT:  Thank you.

3          Madam Clerk, would you call the matter scheduled for 9:00,

4   please?

5          THE CLERK:  Yes, Your Honor.

6          Lexington Criminal Action Number 19-37.  United States of

7   America versus James E. Woosley, called for sentencing.

8          THE COURT:  Thank you.

9          Would counsel state their appearances, please?

10          Mr. Marye.

11          MR. MARYE:  Yes, Your Honor.  Good morning.  David Marye

12   on behalf of the United States.

13          THE COURT:  Thank you.

14          Mr. Inman.

15          MR. INMAN:  Good morning, Your Honor.  James Inman on

16   behalf of Mr. Woosley.

17          THE COURT:  This is Mr. Woosley at counsel table.  Thank

18   you.

19          This matter is scheduled for a sentencing hearing this

20   morning.  Before we proceed with the hearing, let me first

21   confirm that Mr. Woosley has had the opportunity to review his

22   presentence report and also to discuss the report with his

23   attorney to his satisfaction; is that correct, Mr. Woosley?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  All right.  Mr. Woosley, your presentence

1    report will be filed in the record under seal pursuant to

2    Rule 32 of the Federal Rules of Criminal Procedure.  It's not

3    available for the general public to review.

4         Before we proceed with the sentencing hearing, I do want

5    to have the parties address an issue of restitution.  I have

6    reviewed what seems to be several hundred pages of materials

7    submitted on behalf of a number of individuals seeking

8    restitution, including individuals that are not identified as

9    victims in the specific counts in the case, but would qualify

10   under the Victim Restitution Act, including individuals

11   represented by counsel in Oregon.  So what I would like to do

12   is have the parties address these, what I'll refer to as

13   third-party claims for restitution.

14        In reviewing the United States' sentencing memorandum, it

15   had requested that the Court consider scheduling a hearing

16   later in this matter, but within a 90-day period to either have

17   a proposal for agreed restitution or for the Court to hold

18   further hearings on that issue.

19        So, Mr. Marye, I'll begin with you.

20        MR. MARYE:  Thank you, Your Honor.  As you just noted in

21   my sentencing memorandum, I asked for that additional time.  My

22   practice has been to try to get counsel for the victims who

23   have requested restitution and counsel for the defendant to see

24   if they can reach an agreement.  And because of the late

25   notification, I think that was -- a lot of that was my fault,

 1   that I'm not sure that all of the potential victims have had

 2   the chance to request some restitution.  I believe a few have

 3   sent into my office and I forwarded those to Mr. Inman, but I

 4   don't think they've had sufficient time to really communicate

 5   to see if they can reach an agreement.

 6       Oftentimes that has happened, and then we can notify the

 7   Court if there is an agreement and then there's no need for a

 8   hearing.  But if no agreement can be reached, then we would

 9   need to have a hearing, I think where the United States would

10   have the burden to present to the Court sufficient evidence for

11   the Court to make a finding to impose restitution.

12       THE COURT:  I believe at this time, the specific requests

13   that had been made, there are three specific requests and then

14   one that would be questionable.  One would be for $10,000, the

15   other two for 5,000 each.  And then there's one from the victim

16   identified as Tara that's in excess of a hundred thousand

17   dollars.

18       MR. MARYE:  Yes, sir.  I mean, I've not ever had one go to

19   that point where we've actually, you know, made the request at

20   a hearing for that amount.  I'm not sure, I haven't spoken to

21   any of those attorneys specifically on these requests.  Some of

22   the same attorneys I've dealt with in the past.  And most of

23   the time they seemed to -- even though I guess technically it

24   doesn't matter if the defendant doesn't have money as far as

25   the law is concerned, I think many times the victims' lawyers

1    sort of recognize that that is a factor.

2        And if they can reach an agreement with some amount that

3    they are satisfied, that they are getting something for that

4    client, that does seem, I guess, doable by a particular

5    defendant.

6        Most of the time they seem to be pretty willing to, I

7    guess, in a sense compromise what they're asking for and what

8    they're willing to accept, and whatever a defendant then is

9    agreeable and willing to pay.

10        THE COURT:  Yes, sir.  Under Section 3664(d)(5), that

11   section provides if the victim's losses are not ascertainable

12   by the date that is 10 days prior to sentencing, the attorney

13   for the government or the probation office shall so inform the

14   court and the court should set a date for the final

15   determination of the victim's losses not to exceed 90 days

16   after sentencing.  And then there's other provisions if there

17   are additional losses that are determined.

18        So the question is -- really, the only question is

19   scheduling a date, final date for determination of any

20   restitution amounts.  We are now at mid January.  I would like

21   to have this resolved, if at all possible, within 60 days.

22   Would the parties be available on Friday, March 20th in the

23   morning?  There's a naturalization proceeding here that's

24   scheduled from 11 to 1.  So we could either have it hopefully

25   in another courtroom or following the naturalization

1    proceeding.

2         MR. MARYE:  I'm wide open that day, Your Honor.  Any time

3    would be fine with the United States.

4         MR. INMAN:  That's fine, Your Honor.

5         THE COURT:  All right.  To be on the safe side, we'll

6    schedule this for beginning at 2:00 on that date, Friday,

7    March 20th.

8         If the parties are able to reach some agreement and would

9    like to propose agreed restitution on any victim claims, you

10   can do that.  I don't know that I would necessarily rubber

11   stamp it, but I will set a hearing if it does become necessary.

12        MR. MARYE:  Yes, sir.

13        MR. INMAN:  Thank you, Your Honor.

14        MR. MARYE:  Thank you, Judge.

15        THE COURT:  All right.  Thank you.

16        There are no objections to the presentence report;

17   therefore, I will adopt the guideline calculations that are

18   contained in the report, as well as the facts that would

19   support the guideline calculations in the matter.

20        I'll also briefly review with the parties the materials

21   that I have received in preparation for the hearing.  If

22   there's anything that I don't mention, if you would please call

23   that to my attention just in case I were to overlook something.

24        I did receive the letters that were submitted on behalf of

25   the defendant's wife and daughter, one of his daughters.  That

1    appears as the document at Record Entry Number 38.

2         I have again gone back and reviewed in some detail the

3    forensic report that was requested by counsel for the

4    defendant.

5         There are a couple of other articles that I have reviewed

6    in prior cases and found that some of the issues raised in this

7    proceeding might cause those articles to be relevant here, so I

8    will alert the parties to a couple of those articles.   In the

9    event that you would like copies, I do have copies available

10   for you.

11        The first is an article from Michael Bourke and Andres

12   Hernandez captioned:   The 'Butner Study' redux:   A report of

13   the incidence of hands-on child victimization by child

14   pornography offenders.

15        If you would like, I can give you a brief summary of the

16   nature of that article.

17        There is a second article produced by the United States

18   Department of Justice, Criminal Division, by Alexandra Gelber.

19   She was, and I believe still is, an assistant deputy chief of

20   the Child Exploitation and Obscenity Section of the Criminal

21   Division.   It's an older article, July 1, 2009, but it's

22   captioned:   Response to 'A Reluctant Rebellion,' and then it

23   addresses an article that had previously appeared in the

24   June 2009 issue of the ABA Journal, and it specifically

25   addresses the basis for certain guideline enhancements that

1    pertain to child pornography, both production as well as

2    distribution and possession.

3         I've also reviewed, again, in some detail, the defendant's

4    sentencing memorandum and motion for relief as a variance under

5    Title 18, Section 3553(a), and I have reviewed the United

6    States' sentencing memorandum.  Those last two documents, the

7    parties' filings, appear at Record Entry Number 36, and then

8    the government's sentencing memorandum was Record Entry

9    Number 34.

10        And I have reviewed in some detail the presentence

11   investigation report prepared by the probation officer.  At

12   this time, I'll take a moment to review the guideline

13   calculations in the case, together with other relevant

14   provisions of the report, which would include issues concerning

15   the defendant's criminal history, as well as the guideline

16   range and issues of a fine.

17        We've discussed previously restitution.  At this time,

18   it's my understanding that the three identified victims

19   outlined in the report, in the offense level calculations

20   section, have not requested restitution at this time.  But if

21   my understanding is incorrect, please advise me of that as

22   well.

23        Turning to the presentence report.  The offense level

24   calculations do begin at page 8 of the report.  It appears that

25   they are consistent with the parties' recommendations in the

1   case as contained in the plea agreement.  The 2018 edition of

2   the guideline manual has been used.

3       The counts are broken down according -- the offense level

4   calculations are broken down according to identified victims,

5   and being identified as Count 2A, 2B, and 2C.

6       2A, victim's identified as G.W., base offense level is 32.

7   There's a four-level increase because the victim had not

8   attained the age of 12.  A two-level increase for the

9   commission of a sex act or sexual contact.  A two-level

10  increase if the defendant knowingly engaged in distribution.

11  And a four-level increase if the material portrayed sadistic or

12  masochistic conduct or depictions of violence, or an image or

13  toddler.

14      Finally, there is a two-level increase based upon the

15  defendant's position as a relative or legal guardian of the

16  minor involved in the offense.  In this case, it was the

17  grandchild of the defendant involved as the identified victim.

18  That results in an adjusted offense level of 46.

19      Second identified victim is listed in Count 2B.  The base

20  offense level is 32.  There is a four-level increase based upon

21  the minor not having attained the age of 12, and a two-level

22  increase based upon distribution.  And, again, a four-level

23  increase under 2G2.1(b)(4), because the material portrayed an

24  infant or toddler.  And then, again, a two-level increase based

25  upon the defendant's status as a relative of the minor involved

1   in the offense.   That results in an adjusted offense level of

2   44 for that count.

3        And then, finally, for Count 2C, which is the victim's

4   minor daughter, this would be a base offense level of 32,

5   two-level increase based upon the age of the victim having

6   attained the age of 12 but not 16.   And a two-level increase

7   because the defendant knowingly engaged in distribution.

8   Finally, a two-level increase based upon his relationship to

9   the victim being a parent.   And that creates an adjusted

10  offense level of 38 for that count.

11       There's then the multi-count adjustment that results in a

12  three-level increase that would be added to the higher offense

13  level for Count 2A.   So we take 46 plus 3, that results in 49.

14  Then there is a Chapter 4 enhancement of five levels that

15  results in -- that's under 4B1.5(b)(1), that results in an

16  increase to 54.

17       There is a three-level reduction shown for acceptance of

18  responsibility.   Before the Court may apply the third level of

19  acceptance credit, it does require a motion from the

20  government.

21       Mr. Marye.

22       MR. MARYE:   I so move, Your Honor.

23       THE COURT:   All right.   The motion will be sustained, and

24  that would result in a further adjustment of the offense level

25  to 51.   The guideline table only goes to 43, so that's the

1   maximum offense level that may be applied.

2        So while the defendant otherwise would have an offense

3   level of 51, that's reduced to 43 for purposes of calculating

4   the guideline range in the case.

5        His criminal history is outlined in the report.  While he

6   does have several convictions, he does not have any criminal

7   history points under Chapter 4 of the guidelines, and therefore

8   he's placed in criminal history category I for purposes of

9   calculating the guideline range.

10       I'll also note for the record that there is reference to

11  the related state charges that are pending and the report does

12  not provide the Court with information about any recent

13  information in the case.  So I will ask the parties to address

14  that issue and provide the Court with any additional

15  information they may have.

16       Turning over to part D, sentencing options.  Based on a

17  total offense level of 43 and criminal history category I, the

18  guideline range in the case would be a range of life

19  imprisonment.  But because the statutory maximum for the count

20  of conviction is 30 years, the statute would provide for not

21  less than 15 nor more than 30 years.  His guideline range then

22  would become that statutory maximum or 360 months.

23       Also, as reflected in paragraph 125, the statute would

24  also require a term of supervision of at least five years, but

25  there's no upper limit, so the range for supervision is five

1    years to life.

2         The fine range in the case is a range of 50,000 to

3    $250,000.  The fine range is set forth in paragraph 31.  And

4    those are the guideline calculations that have been adopted in

5    this matter.

6         The defendant entered a guilty plea to Count 2 of the

7    indictment and at the time that his plea was entered, the

8    United States indicated it would be moving to dismiss the

9    remaining counts at the time of the sentencing hearing.

10         Is that still the government's intent?

11         MR. MARYE:  Yes, Your Honor.  I would ask the Court to

12    dismiss Count 1 and Counts 3 through 6 consistent with the plea

13    agreement.

14         THE COURT:  All right.  I will sustain that motion.  Those

15    additional counts will be dismissed pursuant to the parties'

16    agreement and as reflected in the plea agreement.  Dismissal

17    will be effective upon entry of the judgment in the case.

18         I'll also note for the record that I have signed the

19    preliminary judgment of forfeiture relating to items that were

20    seized, and it did not include the computer.  That item or that

21    request was denied pursuant to the parties' agreement in the

22    case.  So that issue has been addressed, but the forfeiture

23    item will be reflected, the other items will be reflected in

24    the judgment to be entered in the case, other items of

25    forfeiture.

1        All right.  Let me see if we have any other motions to be

2   taken up  before we proceed with allocution.

3        Any motions from the government?

4        MR. MARYE:  No additional motions by the United States.

5   Thank you, Your Honor.

6        THE COURT:  Thank you.

7        Mr. Inman?

8        MR. INMAN:  No, Your Honor.

9        THE COURT:  All right.  If not, we will proceed with

10  allocution at this time.

11        Mr. Inman, I'll hear from you first and also from

12  Mr. Woosley, if you would like to address the Court.  And after

13  the United States has a chance to respond, then I'll give you a

14  final opportunity to make any reply, if you would like to do

15  so.

16        MR. INMAN:  Thank you, Your Honor.

17        I believe that Mr. Woosley would like to address the Court

18  after I speak.

19        THE COURT:  Yes.

20        MR. INMAN:  Just so the Court is aware.

21        THE COURT:  Thank you.

22        MR. INMAN:  I want to first talk about the forensic report

23  that was prepared, Your Honor, and I'll get to the 3553 issues.

24        This was something that I asked for on behalf of my client

25  to help the Court in aid of sentencing, and ultimately they

1   diagnosed Mr. Woosley with several conditions that might assist

2   the Court in placement and in considering a sentence for him.

3       But I have to say that I am less than pleased with how

4   that process happened, I know that's no fault of the Court's.

5       THE COURT:  Well, some information in the report certainly

6   does not help Mr. Woosley, does not support some of the

7   arguments that have been made.

8       MR. INMAN:  Yes, Your Honor.  When I read the report, my

9   first inclination was they just didn't understand what the

10  purpose was.  I felt like the fact that they had four reviewers

11  dealing with Mr. Woosley, there is some disconnect on -- they

12  didn't understand he had already pled guilty.

13      They seemed to be concerned with competency.  They gave

14  him a test regarding competency that shouldn't have been

15  applied.  Mr. Woosley was told at the end of the evaluation by

16  Dr. Lewis that some of these tests should not have been given

17  to him, that he would have given him other ones.

18      But my bigger concern, Your Honor, is I believe in the

19  facts, the background and the facts, they just didn't pay

20  attention.

21      THE COURT:  Well, I understand that there are some

22  inconsistencies in the report, such as their conclusion that

23  the defendant was not consistent because he referred to

24  different victims' ages.  And, in fact, his actions would

25  support the conclusion that not only were minors involved, but

1    also the minor daughter, who was within that age range.

2         MR. INMAN:  I'm not sure about the ages, Your Honor.

3    That's not something I picked up on.  I'm going to take the

4    report for what it says, that they looked at the order of

5    assigning the evaluation and the plea agreement.

6         And, honestly, I don't know where they get the rest of

7    these facts.  Some of the marital stuff just doesn't make

8    sense.  Just basic things about the math on when he was married

9    to whom.

10        But on page 3, where we start talking about the

11   description of the offense, there is a line in here where it

12   says that he took photographs of them bathing and in the

13   backyard without clothes.  That's not anywhere in the plea

14   agreement.

15        THE COURT:  Let me turn to the report.

16        MR. INMAN:  That's not even in the discovery.

17        THE COURT:  Page 3, if you indicate --

18        MR. INMAN:  Last paragraph, Your Honor, on page 3.  And

19   even before that, it says he is going to plead guilty but he

20   already pled guilty.

21        THE COURT:  All right.

22        MR. INMAN:  So there are things like that throughout this

23   that just --

24        THE COURT:  Well, let me make sure we're at the same

25   place.  Under description of the offense, this is the second

1    paragraph.

2         MR. INMAN:  Yes, Your Honor.  That begins --

3         THE COURT:  The defendant explained the production of the

4    child pornography was unintentional.

5         MR. INMAN:  That's not in his plea agreement, Your Honor,

6    so I don't know where --

7         THE COURT:  Well, this is based on a statement that

8    apparently he made to one of the examiners.

9         MR. INMAN:  Right.

10        THE COURT:  He stated to the examiner that the production

11   of child pornography was unintentional.

12        MR. INMAN:  That gets to my point, the reason for this is

13   not to establish his guilt.

14        THE COURT:  Well, the report, the reason that this may be

15   important is that this report indicates that this defendant

16   was, they don't conclude malingering, but was attempting to

17   diminish his conduct either by blaming others or blaming other

18   issues, or in saying such things as it was unintentional, when

19   in fact it does appear to have been clearly intentional.

20        Otherwise, I wouldn't think he would have entered a guilty

21   plea.

22        MR. INMAN:  I understand that, Your Honor.  I think the

23   issue is not -- as lawyers, we're thinking about what the term

24   "intentional" means.  I think in Mr. Woosley's mind, he's

25   thinking this is not something I wanted to do.  It's behavior

1  that he recognizes is incorrect and wrong; and, honestly, we

2  weren't there, Mr. Woosley was with an examiner that was

3  supposed to diagnose him.

4       THE COURT:  Right.  This is a summary of statements that

5  he made to one examiner, and it would include not only that it

6  was unintentional, his conduct, but then it goes further that

7  Mr. Woosley indicated, which would be a statement that he would

8  have made to this person conducting the examination, that he

9  had two grandchildren with their ages listed.  And that he took

10  photographs of them bathing and in the backyard without

11  clothes.  Well, that was the statement apparently that he made

12  to this person.

13       Now, whether it appears in the discovery or in anything

14  else in the case, you may disagree with whether he made that

15  statement, but that appears in the report as a statement he

16  made to the examiner.

17       MR. INMAN:  My point, Your Honor, is to say I don't

18  believe that that statement is correct and I don't believe the

19  examiner's recorded it correctly.  Mr. Woosley -- the way this

20  case started is Dropbox informed authorities that an image had

21  come through that appeared to be child porn.

22       They went to investigate Mr. Woosley at that point.  He

23  said, I want to speak to a lawyer, changed his mind and talked

24  to authorities and told them everything.

25       THE COURT:  Right.

1          MR. INMAN:  So all of the evidence in this case is

2   basically his confession.  The only thing they had prior to

3   that was an image in Dropbox.  He told them about his daughter.

4   He told them about two boys.  They are not both of his

5   grandchildren, but the report says they are.  There are a lot

6   of little facts in here that are incorrect.  I don't want the

7   Court --

8          THE COURT:  It's not the little facts that concern me in

9   this case.  It's the big facts as reflected in the presentence

10  report, such as when he was confronted, when he did make a

11  statement to law enforcement, he said -- what did he say to law

12  enforcement, are we going to find any child porn on your phone?

13  And he said how much?  He said a shitload.

14         MR. INMAN:  That's correct, Your Honor.

15         THE COURT:  Right?  Whenever they asked him further

16  questions, he said pretty much the entire two gigabytes in the

17  Dropbox would contain child pornography.

18         MR. INMAN:  That's correct.

19         THE COURT:  So in other words, we have an individual that

20  claims, based on his own statements to the Court, that he's a

21  pedophile and he's been addicted to child pornography for some

22  period of time, for a lengthy period of time.  And that he was

23  collecting that.  That's what he was collecting in large

24  amounts.

25         And so that is -- there is a disconnect between that

1    information and attempting to say he only had a couple of

2    pictures, didn't really mean to do it.

3         MR. INMAN:  Your Honor, again, my emphasis is this report

4    has a lot of facts that nobody was there to verify.

5         THE COURT:  Right.  You asked for the report.

6         MR. INMAN:  I did, Your Honor.

7         THE COURT:  You want to ignore it?  I'll ignore it.

8         MR. INMAN:  If that's what the Court wants to do.

9         THE COURT:  If that's what you want me to do, that's what

10   I'll do.  Because the more damaging information in this case is

11   the information contained in the presentence report.

12        Specifically in the report, in the factual section, the

13   offense conduct section, beginning at paragraph 8.  Now we have

14   confirmation of a lot of the information that is contained in

15   the section of the presentence report.

16        MR. INMAN:  Yes.

17        THE COURT:  There's some sections we don't necessarily

18   have confirmation of, such as the defendant's statement that he

19   was given alcohol at age 5, or that he was sexually abused at

20   around age 7.  He never reported it to anyone.  Or that he was

21   abused by an uncle or two cousins.  We don't have any

22   confirmation of that, other than his own statements.  But we do

23   have confirmation of a lot of other information in the report.

24        It's not positive for the defendant.

25        MR. INMAN:  Right.  Just to reiterate, Your Honor, a lot

1    of the statements were from Mr. Woosley.  He offered the

2    information about his daughter, that they didn't know anything

3    about that prior.  He offered the information about the two

4    grandsons.  The image that brought them to Mr. Woosley's door

5    was a separate child porn image from Dropbox.

6         THE COURT:  Right.  Involving an infant.

7         MR. INMAN:  Yes.

8         THE COURT:  And while it wasn't identical to the

9    description of that video that's described in the presentence

10   report, there are some similarities, aren't there?

11        MR. INMAN:  Right.  I'm not defending those actions, Your

12   Honor.  I believe that what's in the presentence report is

13   accurately reflected in the discovery, which is primarily based

14   on Mr. Woosley's statements.  I don't think there's any reason

15   to doubt what Mr. Woosley said happened to him as a child.

16   Certainly --

17        THE COURT:  Well, does that help or hurt?  Because let's

18   draw the analogy of a tree with very deep roots.

19        MR. INMAN:  I don't think it helps anyone to be abused

20   when they are a child.

21        THE COURT:  Right.

22        MR. INMAN:  I think that --

23        THE COURT:  The concern going forward is not whether that

24   excuses his conduct, but whether it creates a danger going

25   forward to other individuals, right?

1        If we look at the factors of 3553 --

2        MR. INMAN:  Right.

3        THE COURT:  -- I look at the issue of deterrence and we

4    look at issues of protecting the public.

5        MR. INMAN:  Yes, Your Honor.

6        THE COURT:  If we have an individual that has either been

7    diagnosed as a pedophile or has tendencies of pedophilia and

8    has engaged in collecting child pornography for a long period

9    of time in large amounts, or let's say not for a long period of

10   time but in large amounts, doesn't that present a unique danger

11   to the public going forward?

12       MR. INMAN:  Right.

13       THE COURT:  It's just not enough to say, well, I'm now

14   going to these classes, Celebrate Recovery classes, and now I

15   know that I may have a problem so go light on me because I

16   think I can beat this.  So it's contrary to the history in the

17   case.

18       MR. INMAN:  There's -- I -- in my sentencing memo, I tried

19   to make clear, this is a crime that's worthy of a significant

20   period of imprisonment.

21       THE COURT:  Right.

22       MR. INMAN:  The question is when we get to the end of how

23   much time.

24       THE COURT:  Right.

25       MR. INMAN:  And I believe that the issue with Mr. Woosley

1    is that the things that happened in his childhood, the fact

2    that he's doing Celebrate Recovery, if you have a trauma in

3    your childhood, you need treatment.  And he's never had that

4    until he reaches a jail where suddenly it's apparent to him

5    that this is an issue that should have been -- he shouldn't

6    have dealt with on his own.

7        So in bringing up those issues of his past, Your Honor,

8    I'm not arguing that he should get a slap on the wrist, I'm

9    arguing that he should get the treatment that's requested in

10    the psych report.

11        THE COURT:  Right.

12        The report -- again, I know you want me to discount the

13    report, but the report indicates that the defendant should

14    receive two types of treatment, sexual offense treatment for

15    his condition, and the RDAP program.

16        I don't see anything in the report that would support

17    recommending the RDAP program.  When we look at substance abuse

18    in the presentence report, he indicates he hasn't even used

19    alcohol since he's been married to his current wife.

20        MR. INMAN:  That's correct.

21        THE COURT:  Why would that support the RDAP program?

22        MR. INMAN:  Again, this goes back to, I don't know if they

23    were listening when Mr. Woosley spoke to them.

24        So ultimately the decision to ask for that report was

25    mine, Your Honor, and I hope that you don't hold it against my

1    client that it's turned out --

2        THE COURT:  I'm not holding it against your client.  But

3    the information doesn't help him, is all I'm saying.

4        MR. INMAN:  There's nothing that I've written that would

5    suggest that what he's done isn't wrong.  The focus of my

6    motion, Your Honor, is about looking at these facts as the

7    Court has done in detail, and comparing them to other cases in

8    this district and nationally.  That's really the thrust of my

9    argument, is about the sentencing disparity under

10   Subsection (6).

11       And it's my understanding --

12       THE COURT:  There's no doubt -- since you've referenced

13   3553(a)(6), there's no doubt that if we look at nationwide

14   sentencing in these types of cases, that many federal judges

15   don't think these cases are serious enough to merit sentences

16   within their guideline range.  No doubt about that.  But I

17   don't know if those judges are looking at these victim

18   statements.

19       Even if we take away these three particular victims and we

20   just look at, like the individuals that submitted requests for

21   restitution -- and we'll deal with restitution in terms of

22   dollars later -- but these are people that are hurt

23   significantly from the production by others, not of this

24   defendant, but of others -- and there is a significant reason

25   to impose lengthy sentences for individuals that possess and

```
 1    distribute that separate and apart from producing it, which
 2    this defendant did.
 3         MR. INMAN:  I'll concede that production cases are the
 4    ones that get the highest penalties, even among sex offense
 5    crimes.  But I think that what we don't know about those other
 6    cases, and those other district court judges, is the facts that
 7    they faced.
 8         THE COURT:  Exactly.
 9         MR. INMAN:  I start from the position of what is the
10    disparity that is present.
11         And I look at the national averages.  And the average for
12    this type of offense with a mandatory minimum applicable is
13    274 months.  I'm not saying that that is a sentence that should
14    apply in every case.
15         Subsection (a)(6) requires you to look at whether there's
16    an unwarranted sentencing disparity.  And what I would say is
17    that if we look at cases even within this district that we're
18    more familiar with that Mr. Marye's prosecuted, we can see that
19    the worst production offenders, same guideline that I've tried
20    to look for, those are people where there's a sexual act
21    involved and not just the conduct that Mr. Woosley's been
22    involved with.
23         But the --
24         THE COURT:  Do all of us know whether an individual --
25    again, this is a red herring so I hate to dive into this issue.
```

1    But we really don't know whether a person is inclined to commit

2    hands-on offenses, do we, that's convicted of either possession

3    or distribution or production?  Unless they are caught or

4    unless there's a victim that's willing to step forward, we

5    really don't know the inclinations of any defendant that

6    appears before the Court on that issue.

7         MR. INMAN:  Right.

8         Your Honor, (a)(6) requires the Court to look at

9    unwarranted sentencing disparities among defendants with

10   similar records who have been found guilty of similar conduct.

11   So it makes it a little simpler, because we're looking at

12   people that have been convicted of production charges, not the

13   other relevant conduct of child pornography that affects the

14   guidelines.

15        THE COURT:  What happens to a person's guideline range if

16   they enter a plea to a lesser count or a count that has a

17   mandatory minimum -- or, excuse me -- a statutory maximum term

18   that may not accurately reflect their actual conduct?

19        MR. INMAN:  Right.  And the guidelines, all of the offense

20   characteristics, the relevant conduct, all of that goes to the

21   guideline range.  3553 goes to what sentence is sufficient but

22   not greater than necessary.

23        THE COURT:  Have you found any case either in this circuit

24   or another circuit in which the Court has imposed a guideline

25   sentence and on appeal has been found to be an unwarranted

1   sentencing disparity under 3553(a)(6)?

2        MR. INMAN:  I didn't find a single case in the Sixth

3   Circuit that talked about where anyone had raised this issue.

4        THE COURT:  Have you found any case in any circuit -- I'll

5   repeat my question for you.  Are you aware of any case from any

6   circuit in which an appellate court has found that the district

7   court has imposed an unwarranted sentencing disparity in a

8   matter by imposing a guideline sentence?

9        MR. INMAN:  I'm recalling a case, but I'm not sure of the

10  facts regarding what the guideline range was.  Most of the

11  time, in the cases that I've read, Your Honor, the issue is in

12  a multi-defendant case, where someone is challenging their

13  sentence compared to their codefendants.  I didn't find one

14  regarding this issue where -- and, in fact, one of the

15  decisions I read from a district court, I think it was in the

16  Northern District of Ohio, talked about --

17       THE COURT:  Judge Graham, I think?

18       MR. INMAN:  I'm sorry?

19       THE COURT:  Judge Graham?

20       MR. INMAN:  I'm not sure.

21       THE COURT:  Is that the case in which the Court, in a

22  child pornography case, the Court imposed a very lenient

23  sentence and the Sixth Circuit reversed and said substantively

24  unreasonable.  The case was remanded back.  He basically

25  imposed the same case with a few other additions, went up on

1    appeal again, the Sixth Circuit again reversed and remanded and

2    took the case away from the judge?

3        MR. INMAN:  I don't recall that case.  The one I'm

4    referring to, the issue was -- they were talking about

5    disparity, but the district court judge looked at the crime

6    from the perspective of the victim rather than -- the issue

7    under (a)(6) is whether the disparity between when you're

8    comparing similar conduct for the defendant nationally.  But,

9    again, I didn't look outside the Sixth Circuit, Your Honor, I'm

10   happy to do that.

11       But my point is really 3553 and *Booker* are read to say the

12   Court has discretion to sentence Mr. Woosley as it feels is

13   appropriate.  The guidelines are one of the factors that the

14   Court considers.  If you read (a)(6) out of the statute or say

15   that the guidelines account for sentencing disparities, then

16   (a)(6) has no merit to it or has no --

17       THE COURT:  Weight.

18       MR. INMAN:  -- weight to it.

19       THE COURT:  Yes, sir.

20       MR. INMAN:  It would be surplus.

21       THE COURT:  I agree with your argument, but I disagree

22   with your conclusion.  I agree that the Court certainly may

23   consider sentencing disparities in making a decision as to an

24   appropriate sentence in the case, but just because the Court

25   may vary doesn't mean that the Court must vary.

1     Because in this particular case, we have a situation where

2   but for the cap in the guidelines, the defendant, his total

3   offense level would be 51.

4     MR. INMAN:  And, Your Honor, I think that gets to the

5   issue as to why are district courts going below what the

6   guideline range is.  It's because every defendant practically

7   that comes before the court is off the charts.  And maybe the

8   guidelines are structured in a way where they don't account for

9   conduct.

10    THE COURT:  Well, the Sentencing commission has, on

11  several occasions, recommended to Congress that some of the

12  provisions of the guidelines be changed or eliminated, and

13  Congress has refused on several occasions.  Congress

14  understands perhaps the very serious nature of these offenses.

15  And to really understand and explain the seriousness, perhaps

16  we need to go back and look at some of the enhancements that

17  are applied here.

18    MR. INMAN:  Well, I guess my point is, if the defendants

19  that are coming before the Court are all above -- they are off

20  the table, then -- and Congress really does want to punish

21  these crimes seriously, then perhaps the 30 -- statutory --

22    THE COURT:  They are not all off the table.

23    MR. INMAN:  I'm sorry?

24    THE COURT:  They are not all off the table.  This case

25  certainly is.  But quite frankly, the government doesn't

1  prosecute every one of these cases.  Many of these cases are

2  prosecuted in state court, and perhaps the government takes the

3  very serious cases.

4       MR. INMAN:  That could be the case, Your Honor, or the

5  ones where someone like Mr. Woosley has confessed to

6  everything.  That's easy to prove.

7       But I think my point about the guideline range is, again,

8  that if we're following the guidelines, the guidelines say what

9  to do and we exceed the table.

10      Essentially his guideline range in this case is 30 years.

11 And the Court can certainly vary from that, depending on

12 Mr. Woosley's history, the nature of this crime.

13      And if the Court -- I've set out a number of cases in my

14 motion that talk about other cases where a defendant has

15 received a 30-year sentence on a production count, and it seems

16 to be the distinguishing fact is whether or not there was a

17 sexual act rather than sexual contact, which is what

18 Mr. Woosley --

19      THE COURT:  Well, you've compared at least one case, the

20 Derringer case, in which that was the situation where the

21 defendant proceeded to trial and was convicted of four out of

22 five counts and had a life guideline range but he was convicted

23 of four counts.  So under the guidelines, those counts, the

24 statutory maximum terms in those counts were run consecutively

25 to produce a total term of 1,200 months.

1        MR. INMAN:  Right.

2        THE COURT:  Or 100 years.

3        MR. INMAN:  Right.  But on the one production -- or on the

4   production count, I guess as a conspiracy, it was 360 months,

5   and there were three other cases that I cited --

6        THE COURT:  Isn't that capped at 360?  Wasn't that the

7   statutory maximum?

8        MR. INMAN:  Yes.  That's what I'm -- but what I'm saying

9   is that Mr. Derringer received 30 years for what he did.

10        THE COURT:  No, he received a hundred years.

11        MR. INMAN:  Right.  But on the production count.  If we

12   don't want to look at Derringer, we can look at Vandergriff or

13   Brock.

14        THE COURT:  Let's look at Derringer, that's who you were

15   referencing.

16        MR. INMAN:  I put them all in here.

17        THE COURT:  He got 30 years on the production count

18   because that was a statutory maximum.

19        MR. INMAN:  That's correct.

20        THE COURT:  In other words, your argument is that the

21   Court should vary downward here, saying that the Court has the

22   ability to vary.  The Court can only vary downward here because

23   the guideline range is the statutory maximum.

24        MR. INMAN:  Right.  The Court can vary from the guideline

25   range, which in this case is 30 years.  And Derringer, on the

1   production count, it was 30 years.  I'm asking the Court to

2   look at what Mr. Derringer did in comparison.

3       THE COURT:  You're ignoring the other three counts of

4   conviction that resulted in a total term for Derringer of

5   100 years.

6       MR. INMAN:  I'm not ignoring those at all.

7       THE COURT:  I think you are.

8       MR. INMAN:  In the motion, I've also cited other cases

9   where, in this district, the sentence that was imposed was a

10  360-month sentence where, in Vandergriff, the defendant

11  produced videos performing oral sex on his 7-year-old son.  I

12  don't want to get into the details of these cases, but there's

13  three or four other cases here, Your Honor, where I talk about

14  where the defendant has performed a sexual act with the victim

15  and received that 30-year sentence.

16      There are other cases where this district has imposed

17  lower sentences.  And in reading these cases, in looking at the

18  plea agreements and sentencing memos, where I could find them

19  for these cases, the distinction to me is the difference

20  between when a defendant performs a sexual act or just has

21  sexual contact.  Both of those are harmful but they're

22  different degrees of harmful.

23      THE COURT:  In how many of those cases did either the

24  parties enter into a binding plea agreement or did the

25  government not oppose the sentence that was requested by the

 1  defendant?

 2       MR. INMAN:  I didn't see any binding plea agreements in

 3  any of these cases.  Mr. Marye, I think, prosecuted a lot of

 4  these, he could speak to opposition.  It's my guess that in the

 5  sentencing memos I read that he requested the max penalty.

 6       So my point about -- we're talking about a spectrum of

 7  evil here.  On one end you have people like Mr. Derringer and

 8  Ms. Vandergriff, Mr. Brock, Mr. Cooper, who are involved in

 9  committing a sexual act, producing child pornography out of

10  that sexual act.

11       Mr. Woosley did not act in that behavior.  It's detailed

12  in the presentence report in great detail.  The guidelines give

13  a two-point enhancement whether it's a sexual act or sexual

14  contact, so they don't --

15       THE COURT:  Right.  Because the person can still be

16  convicted in state court for the underlying sexual offense.

17       MR. INMAN:  Right.  But if you're looking at what the

18  guidelines say, they treat them together.  But, really, if

19  we're looking at disparities, you're looking at the factual

20  differences between these cases.

21       THE COURT:  So you have a disagreement with the guidelines

22  and you believe that they should be considered differently

23  under the guidelines.

24       MR. INMAN:  Well, I guess I'm preemptively addressing a

25  concern the Court might think as to, well, don't the guidelines

1    account for the differences between these cases.  And I don't

2    believe that it fully does if you're considering that if

3    somebody who actually performs a sexual act with a minor is on

4    the same level as somebody, in Mr. Woosley's case, who touched

5    the child's buttocks.

6         THE COURT:  Let's don't diminish the conduct, Mr. Inman.

7         MR. INMAN:  Your Honor, I don't mean to do that.

8         THE COURT:  Let's talk about what he did after producing

9    those images.  He shared the images.

10        MR. INMAN:  Your Honor, he uploaded the images to Dropbox.

11        THE COURT:  He did the same thing with the videos that

12   were surreptitiously taken of a 12-year-old daughter.  He

13   shared those with other people.

14        MR. INMAN:  That's correct.

15        Your Honor, I would point out, again, under (a)(6), the

16   disparity looks at the conduct for which he is convicted.  He's

17   not charged in this case with the recording of his daughter.

18        THE COURT:  But you have made an argument that I should

19   consider for a variance the nature and circumstances of the

20   crime as well as the history and characteristics of the

21   defendant.

22        Isn't this part of his history and characteristics?

23        MR. INMAN:  Yes, Your Honor.

24        THE COURT:  If we're going to look at his history and

25   characteristics, don't we look at all of his characteristics?

1          MR. INMAN:  This goes to my point, Your Honor, that when

2     we're looking at all of the relevant conduct that goes into

3     calculating his guideline range, which properly has been

4     done --

5          THE COURT:  But you're trying to shave off the bad parts.

6     You're trying to say all he really did was take a couple of

7     pictures of his grandkids' butt, that's all he did.  I'm saying

8     he did a lot more than that.

9          MR. INMAN:  That's not what I'm saying, Your Honor.  What

10    I'm saying is, in comparison to other people before the Court,

11    his conduct is a lot -- well, I shouldn't say "a lot," the

12    other defendants that have come before this Court have done a

13    lot worse.

14         But what I would say, what I'm asking for is relief under

15    3553.  I understand what the guidelines calculate as,

16    3553(a)(6) allows him to seek a variance in part because of a

17    sentencing disparity.

18         When the Court looks at that subsection, it's got to look

19    at convicted conduct.  It can't look at the child porn counts

20    against him, the production count -- or the taping of his

21    daughter that wasn't even charged in this case.  The Court has

22    properly accounted for those in determining the guidelines in

23    this case.

24         But looking at the national averages, we can't tell the

25    facts in all of those cases.  I'm sure there are some that are

1    well below.  You look at a district like Arizona, they have a

2    lot of these types of cases, child pornography production

3    cases, but they don't penalize them very heavily.

4         THE COURT:  Right.  Or Northern California.

5         MR. INMAN:  Well, even Texas had the most, I think, in

6    2018.  And it's still closer to the national average than the

7    Eastern District is.

8         THE COURT:  So if everyone else is doing something wrong,

9    should we do it wrong too?

10        If we have a strong -- if a particular judge has a belief

11   that this is conduct that merits a lengthy sentence, but other

12   courts are saying no, really don't think it's all that bad, and

13   I'll give maybe a two-month or a three-month sentence for

14   conduct when the guidelines are much higher.

15        MR. INMAN:  I can't imagine a Court doing that.  I believe

16   that the Courts take their responsibility seriously.

17        My point is that when we're looking at the national

18   average, we can't know what those facts are.  That's what I'm

19   saying.  We don't know what the judge is looking at before

20   them.

21        So we bring it to this district and we look at this

22   district, which is definitely higher on the average than what

23   the national average is, and we have to figure out, is this

24   disparity warranted.

25        And my argument, Your Honor, just essentially is that, in

1   this case, it's unwarranted given the types of people that have

2   come before this Court and been sentenced to the same guideline

3   range that Mr. Woosley faces.  His conduct does not rise to

4   that level.

5       I would like to address, Your Honor, the fine if I could.

6       THE COURT:  Yes, sir.

7       MR. INMAN:  Mr. Woosley, in both the presentence report

8   and the bond report, they do establish that Mr. Woosley is not

9   able to pay a fine in this case.  And we would ask that -- I

10  know that the statute states a worst-case scenario for the

11  penalty on the fine.  I would posit that Mr. Woosley is not

12  able to pay a fine and that the Court take that into

13  consideration in imposing an amount.

14      THE COURT:  With regard to the fine, the guidelines

15  provide in 5E1.2, Subsection (d), factors that the Court should

16  consider in determining whether a fine is appropriate.

17      One of those factors would be restitution that he may owe

18  or civil judgments arising from the same conduct.  At this

19  point we've essentially deferred the issue of restitution, at

20  least for all of the people that have submitted these requests,

21  until later.

22      My understanding of the way that the -- if there were to

23  be a fine imposed, that the fine would be satisfied before

24  restitution obligations would be satisfied.  So imposing a fine

25  may, in fact, hinder or prevent identified victims from

1    recovering anything in the case.

2         MR. MARYE:  That's correct, Your Honor.

3         THE COURT:  All right.

4         MR. INMAN:  Would it be okay if we approached, Your Honor?

5         THE COURT:  Certainly.

6         (The following portion is sealed and is contained under

7    separate cover.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        (The preceding portion is sealed and contained under

2    separate cover.)

3        THE COURT:  Thank you.

4        Mr. Inman, you may proceed.

5        MR. INMAN:  Thank you, Your Honor.

6        I just would add one more point on the disparity issue,

7    Your Honor, and I'll move on to something else.  Subsection

8    (a)(6) is on an equal footing according to the statute with the

9    provision that requires the Court to consider the guidelines.

10   I think we've talked about it, if it wasn't, then you would

11   have issues with it being a surplus portion of the statute.

12       THE COURT:  I'm sorry, say that again.  I have issues with

13   that?

14       MR. INMAN:  The Court -- I'm sorry.

15       THE COURT:  You talked about, you have issues with it

16   being a surplus portion of the statute?

17       MR. INMAN:  You would.  Excuse me -- one would, is what

18   I'm trying to say, Your Honor.  But if you -- if (a)(6) was not

19   read to be on par with --

20       THE COURT:  I'm not disagreeing with that.

21       MR. INMAN:  Right.

22       THE COURT:  I'm not disagreeing with the fact that the

23   Court can and should consider that on equal footing with every

24   other provision of 3553, if they apply.  But there are some

25   parts that don't apply.

1      MR. INMAN:  But I guess my point is, if greater weight was

2   placed on the guidelines accounting for the disparity, you

3   might have an issue that you had in *Booker*, where it becomes --

4      THE COURT:  Exactly.

5      MR. INMAN:  It takes away the discretion from the Court.

6      THE COURT:  Basically everything -- there's a

7   gravitational pull back to the guidelines if we put too much

8   emphasis on (a)(6).

9      MR. INMAN:  My point is, if you put too much emphasis on

10  the guidelines, it reads (a)(6) out of 3553, and then that

11  situation would lead to an issue that you had in *Booker*, where

12  a Court's discretion is limited because there's so much focus

13  on what the guidelines call for.

14     The last issue I would raise, Your Honor, I believe the

15  Court's already dealt with the forfeiture issue, I saw the

16  order yesterday.

17     And the only issue I would -- that I raised in my motion

18  that I would like to mention here today is that Mr. Woosley is

19  facing a state -- an expected state sentence.  For whatever

20  reason, they have not decided to, as the usual course, dismiss

21  those charges.  And in addition, the charges deal with the

22  video of Mr. Woosley's daughter.

23     So I've asked the Court to consider imposing the sentence

24  in this case concurrent with any expected sentence imposed in

25  that action.

1          That's all I have, Your Honor.

2          THE COURT:  All right.   Thank you.

3          Mr. Woosley.

4          THE DEFENDANT:  Excuse me, Your Honor.  I'm not a lawyer,

5     so everything you're talking here is well over my head.   The

6     only thing I have to say is until I got to jail, until I got

7     into Celebrate Recovery, I did not know I had a problem with

8     pornography.   I found that out.   I've been trying to do

9     whatever I can to get this under control.   I've asked to see a

10    psychologist while I've been in, which has not happened yet.

11    They keep telling me I should wait until I get sentenced and

12    get put in to wherever I'm going.

13          I know I made a very bad judgment, an error in judgment of

14    what I've done.   The stuff I brought on my family, I will never

15    ever be able to forgive myself for.

16          I just -- that's all I have.

17          THE COURT:   Thank you.

18          Mr. Marye.

19          MR. MARYE:  Yes, Your Honor.   First off, I would like to

20    address the situation about the fine.

21          THE COURT:  Yes, sir.

22          MR. MARYE:   And this is my personal predilection, but my

23    preference basically is that we would leave money to be

24    available for restitution for the victims who have requested

25    it.

 1          THE COURT:  I agree with you on that.

 2          MR. MARYE:  Thank you.

 3          Secondly, I just kind of want to apologize to the Court, a

 4     little bit of confusion about the forfeiture.  In my sentencing

 5     memorandum, I had asked that everything be forfeited.  I had

 6     forgotten that the defendant had not agreed to Item 2.  I asked

 7     state police, they did go back and double-check and we're

 8     satisfied there was no -- there were no child porn images

 9     because that was apparently his wife's computer.

10          THE COURT:  Right.

11          MR. MARYE:  And I will arrange with Mr. Inman to try to

12     facilitate the return of that.

13          THE COURT:  That's been included in the judgment, so it's

14     taken care.

15          MR. MARYE:  Thank you, Judge.

16          Next is the pending charges in state court, I think

17     Montgomery Circuit Court.  I do not know -- I don't have any

18     additional information in terms of what they will do.  I know

19     as a former assistant commonwealth's attorney, oftentimes if we

20     had something still that had been also prosecuted and connected

21     in any way federally, oftentimes we would outright dismiss.

22     And sometimes we would insist on some -- a conviction to some

23     count, there will be probably some sort of a plea to a lesser

24     count.  And I don't know for sure what they intend to do, so I

25     really can't tell you other than that, of course, is still

1   there.

2      I don't have any strong preference with whether you would

3   order it to run consecutive or concurrent to whatever sentence

4   they might do.  In my past experience, it always seemed to me

5   that whichever judge is sentencing later sort of might ought to

6   be the one that makes that decision.

7      THE COURT:  That's not what the Supreme Court has said.

8      MR. MARYE:  Yes, sir.

9      THE COURT:  The Supreme Court has clearly indicated that

10   if there are pending charges in state court, that the federal

11   court has the ability to decide whether the sentence would be

12   imposed to run concurrently, consecutively or partially --

13      MR. MARYE:  Yes, sir.

14      THE COURT:  -- concurrent and consecutive.

15      MR. MARYE:  Yes, sir.

16      THE COURT:  That's been what, since 2012 is that Supreme

17   Court decision?

18      MR. MARYE:  I'm not sure I do know that one, Judge.  I'll

19   have to check on that.  I apologize.

20      So I guess I'm trying to give you the information that I

21   don't really know anything definite about what they are going

22   to do.

23      When I first saw the PSR and the incredibly high offense

24   level, I thought, well, you know, this guy should get 30 years

25   without question, because the guidelines --

1          THE COURT:  Well, isn't that what you were recommending in

2     the plea agreement, Mr. Marye?

3          MR. MARYE:  In essence, yes, sir.

4          THE COURT:  The guidelines track the plea agreement.

5          MR. MARYE:  Yes, sir.  And I assume that he would -- it

6     would be way up there and that he probably would get a sentence

7     of 30 years.  And that is fairly consistent, I guess, with most

8     of the cases that I have prosecuted, as Mr. Inman has pointed

9     out in his sentencing memo.  And I have not prosecuted each of

10    those, but several of those.

11         Most of them have gotten the maximum sentence.  I do see a

12    little bit of what he was pointing out in his sentencing

13    memorandum, trying to differentiate between what Mr. Woosley

14    did and what some of those other persons did.  And that a

15    sexual -- actual sexual act, you know, does seem to make it a

16    little worse in some people's minds.

17         One thing that I wanted to address that I guess he had

18    said and that came out when he's claiming that he had been

19    abused as a child.  And that seems to happen often in these

20    kinds of cases.  Part of me thinks maybe that really does

21    impact why someone might do it, certainly doesn't excuse it.

22         But then part of me rails against that and I feel like, if

23    you had that happen to you and you know how awful it was, why

24    would you ever do that to someone else, especially someone that

25    you supposedly love and care about.  Your own grandchild, or

1   anyone, it doesn't have to even be a relative.

2       So I'm not sure what I make of that, other than it

3   certainly seems to me to be something that should help people

4   resolve not to ever do that.

5       As you pointed out, in referencing the Butner study in

6   particular, I am not as familiar with the article you referred

7   by Alexandra Gelber, although I certainly know of her, it does

8   seem there's certainly a good bit of academic study and actual

9   hands-on studies of persons who have been involved in child

10  pornography who have then been actual hands-on offenders.  Just

11  in my personal idea, that certainly seems to make some sense,

12  that it would sort of normalize or desensitize one who keeps

13  doing that, looking at that, that they might then go forward to

14  be a hands-on offender.

15      Basically for that, Judge, I'm asking that the Court

16  certainly consider, I'm sure you would, a pretty substantial

17  sentence of supervised release following whatever sentence the

18  Court imposes.  As I did ask, I had asked for a sentence of

19  30 years.

20      I do believe that Mr. Inman's sentencing memo makes some

21  good points.  I certainly trust the Court's judgment in

22  imposing a fair and just sentence that would be sufficient but

23  not greater than necessary to meet all of the goals in Title

24  18, Section 3553(a).

25      Thank you, Judge.

1        THE COURT:  All right.  Let me just make reference to this

2  study that's been subject to a lot of criticism.  But because

3  it has been referenced, let me just read you the abstract from

4  the article so we're all on the same page.

5        Then I want to go to some of the facts in the presentence

6  report as to why this may be a concern that should be

7  addressed.

8        And then I want to follow that up with statements that are

9  made in the letters submitted by family members as to why that

10  may be a continuing concern for the Court, that is an attempt

11  to minimize conduct.

12        The Butner study, it's a 2008 article, published in, I

13  think it's the Journal of Family Violence.  The abstract reads

14  as follows:  This study compares two groups of child

15  pornography offenders participating in a voluntary treatment

16  program.  Men whose known sexual offense history at the time of

17  judicial sentencing involved the possession, receipt or

18  distribution of child abuse images but did not include any

19  hands-on sex abuse.

20        And, second group, men convicted of similar offenses who

21  had documented histories of hands-on sexual offending against

22  at least one child victim.

23        The goal was to determine whether the former group of

24  offenders were merely collectors of child pornography at little

25  risk for engaging in hands-on sexual offenses, or if they were

1   contact sex offenders whose criminal sexual behavior involved

2   children with the exception of internet crimes that went

3   undetected.

4        Our findings show that the internet offenders in our

5   sample were significantly more likely than not to have sexually

6   abused a child via a hands-on act.  They also indicate that the

7   offenders who abuse children were likely to have offended

8   against multiple victims, and that the incidents of crossover

9   by gender and age is high.

10        In other words, those that claim that they only collected,

11   received child pornography and did not actually engage in

12   hands-on sexual abuse of children was vastly underreported when

13   the study was conducted.  And the study was conducted at

14   Butner, North Carolina, the federal institution that has a sex

15   offender treatment program.  And those individuals that had

16   been convicted of these crimes that did not involve hands-on

17   offenses, as it turns out, hands-on offenses were significantly

18   underreported by that group.

19        Now, does that mean that the Court should only impose

20   significant sentences in cases in which there is hands-on

21   offense; or, as the argument has been made here, sexual abuse

22   of a child of some nature, such as in the Derringer case that

23   has been referenced.  And the answer is no, that it's not

24   necessary to have a hands-on offender.

25        However, there are some concerns that are raised with the

1    information that has been provided of the defendant's conduct

2    as reflected in the presentence report.  Specifically, when we

3    look at the report of the video that was referenced -- now,

4    this was not the defendant's grandchildren -- but when we look

5    at the information contained in paragraph 11, the nature of the

6    video, the activities displayed on the video, and then we look

7    at what the defendant was doing in terms of taking videos of

8    his -- photographs or videos of his grandchildren and then

9    posting those, it does cause me concern that, at some point in

10   the future, the defendant may become a hands-on offender if

11   he's not provided with appropriate treatment, if he has not

12   already hands-on offended a child.  I don't know that.  That's

13   not the basis for the Court's determination.  But it certainly

14   does cause me some concern going forward, and it does reflect

15   the need to provide a lengthy period of supervision in this

16   particular case to allow treatment and also the opportunity to

17   observe the defendant's conduct.

18        Now, is my concern lessened by the letters that were

19   submitted by family members, the wife in particular, where she

20   basically attempts to excuse what the defendant has done?

21   Although she states that she's not making an excuse, she does

22   not seem to understand the nature of the behavior in this

23   particular case.

24        And, likewise, the same is reflected by the letter the

25   daughter submitted.

1          So I am concerned going forward that they do not

2     understand the serious nature of the conduct in this particular

3     case as reflected by these letters.

4          Now, when I consider the sentence to be imposed in the

5     case, I do begin with the guideline range, as the Sixth Circuit

6     has indicated the Court should begin the analysis from the

7     properly calculated guideline range.  In this case, that's

8     360 months.

9          But the Court should also consider all relevant factors of

10    Title 18, Section 3553, and the arguments that are made by the

11    parties as well as the defendant.

12         I'll stop for just a moment, I know that Mr. Inman

13    provided quite a bit of information during his initial argument

14    to the Court, Mr. Marye responded, and I didn't give Mr. Inman

15    the opportunity to reply, if he chooses to do so.  Mr. Inman, I

16    don't know that --

17         MR. INMAN:  Your Honor, there's nothing much to add.  The

18    only thing I was going to add, because the Court had asked me

19    to speak on this and I did not, my understanding is the state

20    case, they're awaiting the outcome of this case.

21         THE COURT:  That's not unusual.  That's not unusual.  All

22    right.  Thank you.

23         Again, I do consider the factors of 3553, and they have

24    been discussed at some length in this proceeding.  The 3553

25    factors do include the nature and circumstances of the offense,

1    as well as the history and the characteristics of the

2    defendant.   There's been quite a bit of information provided

3    with regard to the defendant's history and characteristics.

4         Counsel in this case requested a forensic evaluation,

5    which was performed.   Counsel has now criticized much of the

6    information contained in the forensic report.

7         But the forensic report is not favorable to the defendant.

8    It makes some interesting findings, including information

9    contained around paragraph -- excuse me, pages 5 and 6 of the

10   report, of the manner in which the defendant participated in

11   the evaluations.

12        But as I told Counsel, he asked for the report, it delayed

13   this proceeding.   The report was prepared at his request.   But

14   inasmuch as he finds some parts to be inaccurate, I'll

15   disregard the report.   It will be available to the Bureau of

16   Prisons when it makes a determination about treatment.   But for

17   purposes of sentencing, I'll disregard the information

18   contained in the report but not the information contained in

19   the presentence report.

20        There are no objections to the report, although some --

21   there's no verification for some of the information.   But there

22   is sufficient information for the factual summary that does

23   support the guideline calculations that are made in the case.

24        And basically the defendant was a collector of pornography

25   and child pornography and he admits that he has had this

1   addiction for some period of time.  The report would suggest

2   that he is a pedophile collecting child pornography because

3   that was basically the majority of the pornography that he was

4   collecting, and that's contrary to any assertion that might be

5   made that this just happened by accident.

6        It does appear to the Court that he was looking for that

7   specific type of pornography and was then collecting it and

8   sharing it with others.  And not only was he sharing images of

9   individuals he did not know, but these images of grandchildren

10  and then also his daughter.

11       And while Counsel objects to the Court considering that

12  information, that is part of the information that is included

13  in the guideline calculations for the identified victim

14  reflected in Count 2C.  The defendant acknowledged that fact as

15  part of his history and characteristics when confronted with

16  law enforcement.  And that is information that is relevant to

17  this particular matter because the defendant was not only

18  sharing images of an infant with others, but he was sharing an

19  image of a daughter taking a shower, reprehensible conduct on

20  his part.

21       So although Counsel attempts to diminish the conduct, I

22  believe that the conduct certainly does support a sentence

23  within the guideline range in this particular case.

24       And, likewise, I believe that a guideline sentence would

25  be supported by the other factors that have not been argued

1   here, which would include the need to provide deterrence, not

2   only for this defendant but for others that would be inclined

3   to engage in similar conduct; it would reflect the seriousness

4   of the offense, and I do consider this to be a serious offense;

5   it would promote respect for the law; and it would provide just

6   punishment.

7         And, likewise, with a term of supervision to follow, it

8   would provide a measure of protection to the public.  But,

9   again, I am concerned for the reasons stated about some of the

10  information contained in the letters that have been submitted

11  attempting to characterize the defendant's conduct as merely a

12  mistake.

13        I will be recommending treatment for a sexual disorder in

14  this particular case, but there is no basis to recommend the

15  RDAP program, as I've stated to Counsel, so I will not be

16  recommending RDAP in this case.  The only issue of substance

17  abuse as reflected in the report is former alcohol use, and by

18  the defendant's statements, he stopped consuming alcohol at the

19  time that he married his current wife.

20        Much has been made in this particular case of the need to

21  avoid unwarranted sentence disparities among defendants with

22  similar records who have been found guilty of similar conduct.

23  And in this particular case, as I have indicated, this area of

24  the guidelines is perhaps the area where there are more courts

25  that vary downward from a guideline range that has been

1    properly calculated; but that does not mean that it's necessary

2    that the Court always vary downward.  It is, I think, incumbent

3    to look at all of those cases in which there has been a

4    variance to determine if there is a proper basis for it, and

5    the Court does that in this particular case as well.

6         And I do not find any reason to vary below the guideline

7    range in this case based upon the information that has been

8    provided.  I do not find that it would be necessary or

9    appropriate, based upon sentences for what's been characterized

10   as similar conduct in cases from this district, or in cases

11   from the Sixth Circuit, or in cases nationally.  And I do

12   follow the national statistics in this area fairly closely.

13        Again, just because the Court has the ability to vary

14   downward doesn't mean the Court should.  And there are cases in

15   which the Court should not because varying downward may be

16   inappropriate and may not provide for an appropriate sentence

17   when we consider the other factors of 3553.

18        And a downward variance would not be appropriate in this

19   case for those reasons, and the Court declines to grant the

20   motion and will deny the request at this time.

21        There are a number of concerns that I do have that will be

22   addressed through the conditions of supervision to be imposed.

23   I believe in this case a 15-year term of supervision is

24   necessary and appropriate with many of the standard conditions

25   that have been adopted in this district in these cases, cases

1   involving similar offenses.  So I will be imposing those

2   particular conditions for supervision.

3       I have considered the issue of a fine in the case.  As I

4   have indicated through my comments and questions to Counsel, I

5   believe the fine would not be appropriate in light of the

6   outstanding issue of restitution.  While the three victims

7   identified in the presentence report in the offense level

8   calculation section have not requested any funds at this time,

9   there are possible issues of restitution with the number of

10  victims that have been identified as being victims of

11  pornography that were contained on the defendant's electronic

12  device, the cell phone.  And while that's an outstanding issue,

13  to impose a fine would diminish the ability of those

14  individuals to obtain some type of an award from this

15  defendant.

16      I'll point out that at the hearing that has been scheduled

17  for March on this issue of restitution, the defendant does have

18  the burden of demonstrating, first, that he would not be able

19  to pay any sum in restitution.  While the magistrate judge made

20  an earlier finding as to his ability to pay the cost of his

21  prosecution, that would not necessarily be binding on the Court

22  with regard to the issue of restitution.

23      Let me announce the sentence at this time.

24      It will be the sentence of the Court pursuant to the

25  Sentencing Reform Act of 1984 as modified by the decisions in

1  *Booker* and *Fanfan*, and I do believe the following sentence

2  would be sufficient but not greater than necessary to meet all

3  of the purposes of Title 18, Section 3553(a):

4      Therefore, it will be the judgment of the Court that the

5  defendant, James Edward Woosley, will be committed to the

6  custody of the Bureau of Prisons for a term of 360 months.

7      I will recommend that he participate in the program toward

8  completion of his GED, that he also participate in a job skills

9  and vocational training program, and that he participate in a

10  sex offender treatment program during the period of

11  incarceration.

12      Upon release, he will be placed upon supervision for a

13  term of 15 years.  And within 72 hours of release from the

14  custody of the Bureau of Prisons, he must report in person to

15  the probation office in the district in which he is released.

16      While on supervised release, he may not commit another

17  federal, state or local crime.  He must comply with the

18  mandatory and the standard conditions adopted by the Court and

19  that will be set forth in the judgment and commitment order.

20      The special conditions will be as follows:

21      He will be required to provide the probation office with

22  access to any requested financial information; and he may not

23  incur any new credit charges or open additional lines of credit

24  without the approval of the probation office and unless he's in

25  compliance with an installment payment schedule.

1       As indicated earlier, restitution will be determined in a

2  subsequent proceeding.  But if restitution is ordered, any

3  balance that the defendant may be required to pay must be paid

4  in accordance with the Federal Bureau of Prisons Inmate

5  Financial Responsibility Program.

6       And any outstanding balance that the Court may order upon

7  commencement of supervision will be set by a schedule to be

8  adopted by the Court, any amount that's not paid during the

9  term of incarceration.

10      The defendant will be required to participate in a program

11 for treatment of mental health and sexual disorders and must

12 undergo a sex offender risk assessment, psychosexual evaluation

13 and/or other evaluations as needed; and will be subject to

14 periodic polygraph examinations and computer voice stress

15 analysis testing.  That would be at the direction and

16 discretion of the probation office.  He must also follow the

17 rules and regulations of the sex offender treatment program as

18 implemented by the probation office.

19      His residence and employment must be preapproved by the

20 probation officer in compliance with state and local law.

21      He may not frequent, volunteer or work at places where

22 children under the age of 18 congregate, that would include

23 playgrounds, parks, daycare centers, public swimming pools,

24 youth centers, video arcade facilities and the like, unless

25 approved by the probation office.  And he may not have any

1    contact with any identified victims.

2         He must not associate or have verbal, written, telephonic

3    or electronic communication with any person under the age of 18

4    without the permission of the probation officer.  This does not

5    include persons under the age of 18 such as ticket vendors,

6    cashiers, waiters and waitresses or the like for whom he must

7    deal in order to obtain ordinary and usual commercial services.

8         He may not possess, view, listen to or go to locations

9    where any form of pornography, sexually stimulating

10   performances or sexually oriented materials or items or

11   services are available.  And he may not possess or use a device

12   capable of creating pictures or videos without the approval of

13   the Court.  So I'm not deferring to the probation office on

14   this, this would require approval of the Court.

15        And he must register as a sex offender as prescribed by

16   state law.  And he must not possess or use a computer or any

17   device with access to any online computer service at any

18   location, including place of employment, without the prior

19   written approval of the probation officer.  This includes any

20   internet service provider, bulletin board system or any other

21   public or private network or email system.

22        He must also consent to the probation office conducting an

23   unannounced examination of his computer system and any internal

24   or external storage devices which may include retrieval,

25   copying of all memory from the hardware and software, and the

1   removal of such systems for the purpose of conducting a more

2   thorough inspection.

3       And he must consent to having installed on his computer

4   any hardware or software to monitor his computer usage or

5   prevent access to particular materials.  And he must consent to

6   periodic inspection of any such installed hardware and software

7   to ensure that it's functioning properly.

8       He must provide the probation office with accurate

9   information about his entire computer system, that would

10  include the hardware and software and any internal or external

11  storage devices, and all passwords used by him.  And he must

12  abide by the rules of the computer restriction and monitoring

13  program.

14      I will also include a search condition that is necessary

15  in this case.  The defendant will be required to submit his

16  person, any properties, homes, residences, vehicles, storage

17  units, papers or computers as that term is defined by Title 18

18  of the United States Code, Section 1030(e)(1), but it includes

19  other devices excluded from the definition.  He must also

20  submit any other electronic communications or data storage

21  devices or media or any office to a search conducted by the

22  probation officer.

23      The failure to submit to a search would be grounds for

24  revocation of supervision, and he must warn all occupants that

25  the premises would be subject to a search according to this

 1    condition.

 2         The defendant will be required to provide the probation

 3    office with access to any requested financial information.

 4    This condition is included as a means to allow the probation

 5    office to monitor his purchases of electronics and peripheral

 6    devices, as well as any internet service either subscribed to

 7    or accessed by him.

 8         He must also refrain from obstructing or attempting to

 9    obstruct or tamper in any fashion with the efficiency and

10    accuracy of any prohibited substance testing that is required

11    as a condition of release.

12         I will waive the fine requirement in this matter for the

13    reasons previously stated, but he will be required to pay the

14    special assessment of $100 and any subsequent amount of

15    restitution that is ordered by the Court.

16         As I've indicated, the additional counts alleged in the

17    indictment will be dismissed upon entry of the judgment in the

18    case.

19         And the judgment will reflect forfeiture of the items with

20    the exception of the computer that is specifically referenced

21    in the preliminary judgment of forfeiture as being returned to

22    the defendant's wife.

23         I will also recommend placement of the defendant at the

24    institution that may provide sex offender treatment.  I will

25    specifically recommend the facility at Butner, but if that's

1    unavailable, then I would recommend another facility that may

2    provide such treatment to the defendant.

3        And that will be the judgment of the Court.  Judgment will

4    be entered, but we will have further proceedings to determine

5    the amount of restitution to be imposed in the case as

6    previously discussed.

7        In the plea agreement and also at the time that the

8    defendant entered his guilty plea, he waived the right to

9    appeal the guilty plea, conviction, but not the sentence.

10       And, therefore, in just a moment, I will ask the clerk to

11   advise the defendant of his appellate rights with respect to

12   the sentence.

13       However, before I ask the clerk to do that, I'll ask the

14   attorneys to state any objections that might have, first to the

15   sentence that has been announced; second would be any

16   objections under *United States versus Bostic*.  Under *Bostic*,

17   any objections not previously raised should be raised at this

18   time so that they may be addressed by the Court to be properly

19   preserved for review on appeal.

20       And then, finally, if the parties would like the Court to

21   make additional findings to support the sentence that has been

22   announced, I will be happy to make those further findings.

23       Mr. Marye, I'll start with you.

24       MR. MARYE:  Yes, Your Honor.  The United States has no

25   objections to the sentence imposed by the Court, no requests or

1   no objections under *Bostic*.

2          Just one additional thing I failed to mention.  I think

3   Title 18, Section 3014, there is-en a additional mandatory

4   special assessment of $5,000, unless the Court finds the

5   defendant non-indigent.  And I forgot to say anything about

6   that and I don't think you said that, it was hard to hear

7   everything.

8          THE COURT:  Well, what I was telling Mr. Inman is he had

9   the burden of proving indigency at the time of the March

10  hearing, because --

11         MR. MARYE:  Okay.

12         THE COURT:  -- that is an issue that would be related to

13  the $5,000 -- the mandatory restitution by statute would also

14  be related to restitution orders that might be entered in favor

15  of victims that have been identified in the case.

16         MR. MARYE:  Yes, sir, okay.  Thank you, Judge.

17         THE COURT:  So the defendant will have that burden of

18  proof of establishing indigency, but that would be addressed at

19  the time of the restitution hearing in the matter.  All right?

20         MR. MARYE:  In the event agreement is reached on

21  restitution and we notify the Court that there is no need for a

22  hearing, would we still need to have the hearing just for that

23  one issue then?

24         THE COURT:  Unless the parties -- well, yes, unless the

25  parties do agree on --

1          MR. MARYE:  Very well.

2          THE COURT:  -- that issue of indigency, which is required

3    by statute to be proven by the defendant.

4          MR. MARYE:  Yes, sir.  Thank you, Judge.

5          THE COURT:  All right.

6          Mr. Inman?

7          MR. INMAN:  Your Honor, I would only add -- I apologize, I

8    could not hear everything, but I just wanted to make sure that

9    we address the issue of whether the sentence would run

10   concurrent with the state sentence.

11         THE COURT:  You know what?  Since you've said that, I am

12   now going to need to go back and read the judgment again

13   because I don't want there to be an issue raised later that

14   parties weren't able to hear the judgment that was announced.

15         But I did not address that specifically and intentionally.

16   It was my intention not to do so and to allow the state court

17   to make that determination, Mr. Inman.  Because if I made the

18   decision, I would run the judgment consecutively to any

19   sentence that might be imposed by the state court.  So in

20   giving the defendant a bit of a break, I was not going to

21   include that in the judgment itself.

22         MR. INMAN:  Thank you, Your Honor.

23         THE COURT:  All right.  Let me again announce the sentence

24   inasmuch as both counsel have indicated they had some problems

25   hearing the Court due to some construction noise outside.

1    And the Court imposes the following sentence in the case:

2    Pursuant to the Sentencing Reform Act as modified by the

3    decisions in *Booker* and *Fanfan*, and I do find the following

4    sentence to be sufficient but not greater than necessary to

5    comply with the purposes of Title 18, Section 3553(a):

6    Therefore, it will be the judgment of the Court that the

7    defendant, James Edward Woosley, is committed to the custody of

8    the Bureau of Prisons for a term of 360 months.

9    I do recommend that he participate in a program working

10   toward completion of his GED, that he also participate in a job

11   skills and vocational training program, and that he participate

12   in a sex offender treatment program.

13   I have recommended placement at the federal facility in

14   Butner, North Carolina, so that he may receive such sex

15   offender treatment.

16   Upon release, he will be placed upon supervision for a

17   term of 15 years.  Within 72 hours of release from the custody

18   of the Bureau of Prisons, he must report in person to the

19   probation office in the district in which he is released.

20   While on supervised release, he may not commit another

21   federal, state or local crime.  And he must comply with the

22   mandatory and standard conditions adopted by the Court and that

23   will be set forth in the judgment and commitment order.

24   The special conditions include that he must provide the

25   probation office with access to any requested financial

1    information; and he may not incur any new credit charges or

2    open additional lines of credit without the approval of the

3    probation office, unless he is in compliance with an

4    installment payment schedule that will be set by subsequent

5    orders.

6         Restitution will be determined at a subsequent hearing

7    that has been previously announced by the Court.  And if

8    restitution is, in fact, ordered, any amount that the defendant

9    is not able to pay immediately must be paid in accordance with

10   the Federal Bureau of Prisons Inmate Financial Responsibility

11   Program, and any outstanding balance upon commencement of

12   supervision would be paid in accordance with the installment

13   payment schedule.

14        I also announced that the following conditions are

15   included for supervision that are standard conditions for sex

16   offenders that have been found guilty of or have entered pleas

17   in this district.

18        First, the defendant will be required to participate in a

19   program for treatment of mental health and sexual disorders and

20   must undergo a sex offender risk assessment, psychosexual

21   evaluation and/or other evaluation as needed.

22        He will be subject to periodic polygraph examinations and

23   computer voice stress analysis testing, that will be at the

24   direction and discretion of the probation office.  And he must

25   follow the rules and regulations of the sex offender treatment

1    program as implemented by the probation office.

2         His residence and employment must be preapproved by the

3    probation office and in compliance with state and local law.

4         There is a restriction on contact with minors.  The

5    defendant may not frequent, volunteer or work at places where

6    children under the age of 18 congregate, that would include

7    playgrounds, parks, daycare facilities or centers, public

8    swimming pools, youth centers, video arcade facilities and

9    similar facilities, unless contact is approved in advance by

10   the probation office.

11        And he may have no contact with any identified victims.

12        He may not associate or have verbal, written, telephonic

13   or electronic communication with any person under the age of 18

14   without the permission of the probation officer.  This would

15   not include persons under the age of 18 such as ticket vendors,

16   cashiers, waiters and waitresses and the like with whom he must

17   deal to obtain ordinary and usual commercial services.

18        He may not possess, view, listen to or go to locations

19   where any form of pornography, sexually stimulating

20   performances or sexually oriented materials, items or services

21   are available.  And he may not possess or use a device capable

22   of creating pictures or video without the approval of the

23   Court.

24        He must register as a sex offender as prescribed by state

25   law.

1    He may not possess or use any computer or any device with

2  access to any online computer service at any location,

3  including place of employment, without the prior written

4  approval of the probation office.  This includes any internet

5  service provider, bulletin board system or any other public or

6  private network or email system.

7    He must consent to the U.S. Probation Office conducting

8  unannounced examinations of his computer systems, and any

9  internal or external storage devices which may include

10  retrieval and copying of all memory from the hardware and

11  software, and the removal of such systems for the purpose of

12  conducting a more thorough inspection.

13    And he must consent to having installed on his computer

14  any hardware or software to monitor his computer usage or

15  prevent access to particular materials.  And he must consent to

16  periodic inspection of any such installed hardware and software

17  to ensure that it's functioning properly.

18    He must provide the probation office with accurate

19  information about his entire computer system, and that would

20  include the hardware and software, as well as any internal or

21  external storage devices.  And he must provide all passwords

22  used by him, and he must abide by the rules of the computer

23  restriction and monitoring program.

24    Search condition includes that he must submit his person,

25  any property, homes, residences, vehicles, storage units,

1    papers or computers, as that term is defined by Title 18 of the

2    United States Code, Section 1030(e)(1), but it includes other

3    devices excluded from the definition.  And he must also submit

4    any other electronic communications or data storage devices or

5    any media or office to a search conducted by the United States

6    Probation Officer.

7        Failure to submit to a search would be grounds for

8    revocation of supervision, and he must warn all occupants that

9    the premises would be subject to a search according to this

10   condition.  And the Court concludes that a search condition is

11   necessary in this particular matter based upon the nature of

12   the defendant's activities and the need to provide continuing

13   protection of the public.

14       With regard to financial disclosures, the defendant will

15   be required to provide the probation office with access to any

16   requested financial information.  As I indicated, the reason

17   for including this condition is that it's meant to allow the

18   probation office to monitor purchases of electronics and

19   peripheral devices, as well as any internet service that's

20   either subscribed to or accessed by the defendant.

21       He must also refrain from obstructing or attempting to

22   obstruct or tamper in any fashion with the efficiency and

23   accuracy of any prohibited substance testing, which is required

24   as a condition of release.

25       I've waived the fine requirement in the case for the

1  reason explained earlier, but the defendant is required to pay

2  the $100 special assessment as well as any restitution that

3  might be subsequently ordered by the Court.

4       Again, Mr. Marye, I have explained the issue of the

5  defendant's indigency and the burden of proof with regard to

6  that issue that will be determined, and that is related to the

7  statutory amount of restitution.

8       You've indicated you didn't have any objections or

9  requests for additional findings by the Court and had no *Bostic*

10 objections.

11      Mr. Inman, I'll again ask you to respond to those three

12 questions.

13      MR. INMAN:  Your Honor, no further objections, other than

14 those previously stated.

15      THE COURT:  Thank you.

16      Madam Clerk.

17      THE CLERK:  You are notified by this Court that you have a

18 right to appeal your case to the Sixth Circuit Court of

19 Appeals, which on proper appeal will review the case and

20 determine that there has or has not been an error of law.

21      If you're unable to pay for the cost of the appeal, you

22 have a right to apply for leave to appeal in forma pauperis,

23 which means you may appeal without paying for it.

24      If you are without the services of an attorney and desire

25 to appeal, upon request the Clerk of this Court shall prepare

1   and file forthwith a notice of appeal on your behalf.  With few

2   exceptions, this notice of appeal must be filed within 14 days

3   from the date of entry of the judgment.

4       If you do not have sufficient funds to employ an attorney,

5   the Court of Appeals may appoint your present attorney or

6   another to prosecute the appeal for you.  You may request to be

7   released on a reasonable bond pending the appeal.

8       THE COURT:  Thank you.

9       Mr. Woosley, you are about to be handed what was just

10  read.  Please take a moment to review your appellate rights

11  with counsel.  After you have assured yourself you understand

12  those rights, if you could please sign the original document,

13  there is a copy that you can keep for your records.

14      Thank you.

15      Before we recess, I do want to advise the parties that

16  with regard to the issue of restitution with victim claims that

17  have been made in the case, the attorneys representing three of

18  the victims identified as Henley, Maureen and Jessy, that would

19  be Deborah Bianco from Bellevue, Washington, she has submitted

20  a letter to the United States which has been provided to the

21  Court in each of those matters.

22      And at the end of her letter, she requests that any

23  restitution order that might be entered would address certain

24  matters, including whether the victim is, in fact, a victim of

25  the defendant's crime.  In the marine series, she lists five

1    specific items that she would ask to be specifically addressed

2    in any restitution order.

3        And if the parties are able to resolve issues of

4    restitution, I would expect that they would specifically

5    address those matters listed in those letters in any

6    submissions to the Court.

7        MR. MARYE:  Yes, sir.

8        THE COURT:  All right.

9        MR. INMAN:  I don't believe I've been provided a copy of

10   that, but I can get it from Mr. Marye.

11       MR. MARYE:  I thought I had sent it, but I will

12   double-check, and I will certainly make sure that he has that,

13   Judge, try to get that facilitated.

14       THE COURT:  Very well.

15       See if we have any other issues to take up in the case.

16       MR. MARYE:  Not on behalf of the United States, no, sir.

17       THE COURT:  Mr. Inman, anything else?

18       MR. INMAN:  No, Your Honor.

19       THE COURT:  All right.  We'll take about a five-minute

20   recess before we call the matter that was originally scheduled

21   for 10:00.

22       (Proceedings concluded at 10:47 a.m.)

23

24

25

1                    C E R T I F I C A T E

2              I, Linda S. Mullen, RDR, CRR, do hereby certify that

3       the foregoing is a correct transcript from the record of

4       proceedings in this above-entitled matter.

5

6

7       /s/Linda S. Mullen              February 20, 2020
        Linda S. Mullen, RDR, CRR      Date of Certification
8       Official Court Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25