UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON, KENTUCKY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Lexington Criminal |
| | ) | Action No. 19-37 |
|     Plaintiff, | ) | |
| | ) | At Lexington, Kentucky |
| -vs- | ) | |
| | ) | |
| JAMES E. WOOSLEY, | ) | May 10, 2019 |
| | ) | 1:30 p.m. |
|     Defendant. | ) | |


TRANSCRIPT OF REARRAIGNMENT HEARING PROCEEDINGS
BEFORE THE HONORABLE DANNY C. REEVES
UNITED STATES DISTRICT JUDGE



Appearances of Counsel:

On behalf of Plaintiff:          DAVID A. MARYE, ESQ.
                                 Assistant U.S. Attorney
                                 260 West Vine Street
                                 Suite 300
                                 Lexington, Kentucky  40507

On behalf of Defendant:          JAMES MICHAEL INMAN, ESQ.
                                 Green Chestnut & Hughes, PLLC
                                 201 East Main Street
                                 Suite 800, Chase Tower
                                 Lexington, Kentucky  40507

Court Reporter:                  PEGGY W. WEBER, RPR
                                 Court Reporter
                                 P.O. Box 362
                                 Lexington, Kentucky  40588
                                 (859) 421-0814




Proceedings recorded by mechanical stenography,
transcript produced by computer.

1          (Whereupon, the Rearraignment Hearing proceedings

2     commenced on Friday, May 10, 2019, at 1:30 p.m., on the

3     record in open court, as follows.)

4          THE COURT:  All right.  Thank you.

5          Madam Clerk, if you would call the matter

6     scheduled for 1:30, please.

7          THE CLERK:  Yes, Your Honor.

8          Lexington Criminal Action Number 19-37,

9     United States of America versus James Edward Woosley,

10    called for rearraignment.

11         THE COURT:  Thank you.

12         If counsel would state their appearances,

13    please.

14         MR MARYE:  Yes, Your Honor.  Good afternoon.

15         David Marye on behalf of the United States.

16         THE COURT:  Thank you.

17         Mr. Inman.

18         MR. INMAN:  Good afternoon, Your Honor.

19         James Inman on behalf of Defendant

20    James Woosley.

21         THE COURT:  All right.  And this is Mr. Woosley

22    at counsel table.  Thank you.

23         This matter is scheduled for a hearing on the

24    motion for rearraignment.

25         Is Mr. Woosley prepared for rearraignment at

1    this time?

2              MR. INMAN:  Yes, Your Honor.

3              THE COURT:  Madam Clerk, if you would please

4    administer the oath to the defendant to answer questions.

5              THE CLERK:  Yes, Your Honor.

6              Could you please stand, raise your right hand.

7              Do you swear unto God, or affirm, to tell the

8    truth, the whole truth, and nothing but the truth, subject

9    to the penalty of perjury?

10             Do you so swear or affirm?

11             DEFENDANT WOOSLEY:  I affirm.

12             THE COURT:  Thank you, and please be seated.

13             Mr. Woosley, would you state your full name,

14   please?

15             DEFENDANT WOOSLEY:  James Edward Woosley, Jr.

16             THE COURT:  All right.  Mr. Woosley, you are

17   appearing here this afternoon for purposes of entry of a

18   guilty plea to one count of a six-count indictment.  Your

19   attorney indicates you're ready to proceed at this time.

20   Is that correct?

21             DEFENDANT WOOSLEY:  Yes, sir.

22             THE COURT:  All right.  Well, as we begin, let

23   me first remind you that you've just been placed under

24   oath by the clerk, and as a result the answers that you

25   give to the questions that I'll be asking you must be --

1    must be truthful.

2            I do need to remind you that if you should fail

3    to give truthful answers, you could be prosecuted for

4    perjury or making a false statement to the Court.

5            You do understand that?

6            DEFENDANT WOOSLEY:  Yes, sir.

7            THE COURT:  Well, let me explain the way we'll

8    be proceeding.

9            I'm going to begin by asking you several

10   questions to confirm that you're competent and able to

11   enter a guilty plea in the case.

12           Also, I want to discuss with you some of the

13   factors that the Court would consider in imposing a

14   sentence in this matter.

15           And I also want to discuss with you some of the

16   rights that you'd be giving up by entering a guilty plea

17   rather than proceeding to a jury trial.

18           If at any point you feel like you don't

19   understand one of my questions, or if I'm not clear,

20   please stop me and tell me that.  If you'll do that, I'll

21   repeat or rephrase the question for you.

22           Will you do that?

23           DEFENDANT WOOSLEY:  Yes, sir.

24           THE COURT:  All right.  Mr. Woosley, how old are

25   you?

1           DEFENDANT WOOSLEY:  I'm 48.

2           THE COURT:  How much education do you have?

3           DEFENDANT WOOSLEY:  I went through 11th grade,

4  almost finished 12th.

5           THE COURT:  All right.  Where did you last

6  attend high school?

7           DEFENDANT WOOSLEY:  Montgomery County High

8  School, Mt. Sterling, Kentucky.

9           THE COURT:  All right.  Have you attempted to

10 get your GED?

11          DEFENDANT WOOSLEY:  I'm in the process of

12 getting it now.

13          THE COURT:  All right.

14          DEFENDANT WOOSLEY:  I'm waiting to take part of

15 the test.

16          THE COURT:  All right.  Are you able to read and

17 write?

18          DEFENDANT WOOSLEY:  I have dyslexia so it takes

19 me a little time to read and understand.

20          THE COURT:  All right.  There's a written plea

21 agreement in this case, and I'll be asking you some

22 questions about that document.  If there's anything that

23 you don't understand, if you're having a difficult time

24 either understanding or reading it, if you would point

25 that out, and I'll make sure we're all in agreement as to

 1   what those terms and conditions are.  All right?

 2              Are you currently receiving any treatment, any

 3   medical treatment, or treatment for any mental health

 4   issues?

 5              DEFENDANT WOOSLEY:  No, sir.

 6              THE COURT:  Have you ever been treated or

 7   hospitalized for any type of a mental illness or mental

 8   condition?

 9              DEFENDANT WOOSLEY:  No, sir.

10              THE COURT:  Have you ever been treated or

11   hospitalized for addiction to either drugs or alcohol?

12              DEFENDANT WOOSLEY:  No, sir.

13              THE COURT:  Have you ever been diagnosed as

14   having any type of a mental health issue?  And that could

15   include anxiety or depression.

16              DEFENDANT WOOSLEY:  I've been on Valium for --

17   not Valium -- I was on something for anxiety for a little

18   bit.

19              THE COURT:  All right.

20              DEFENDANT WOOSLEY:  Just large -- around a large

21   group of people I get --

22              THE COURT:  A little anxious when you're around

23   large groups?

24              DEFENDANT WOOSLEY:  Yes.

25              THE COURT:  Are you taking that medication now?

1               DEFENDANT WOOSLEY:  No, sir.

2               THE COURT:  How long has it been since you've

3   taken the medication?

4               DEFENDANT WOOSLEY:  Probably about four years.

5               THE COURT:  All right.  Was it prescribed by

6   your doctor?

7               DEFENDANT WOOSLEY:  Yes.

8               THE COURT:  Did it seem to help you when you

9   took the medicine?

10              DEFENDANT WOOSLEY:  Truthfully, no.

11              THE COURT:  Not really?

12              DEFENDANT WOOSLEY:  Yeah.

13              THE COURT:  All right.  Do you remember the

14  condition that you were diagnosed with?  Was it anxiety,

15  or was it something related to that, if you know?

16              DEFENDANT WOOSLEY:  I'm not really sure.  It's

17  somewheres in the similarity of it.

18              THE COURT:  All right.  Are you under the

19  influence of any type of drugs or alcohol at the present

20  time?

21              DEFENDANT WOOSLEY:  No, sir.

22              THE COURT:  Do you take any type of prescription

23  medicines for anything at this point?

24              DEFENDANT WOOSLEY:  Just blood pressure.

25              THE COURT:  Okay.

1            DEFENDANT WOOSLEY:  Prozar (sic), I believe, is
2   the name of it.
3            THE COURT:  And are you employed?
4            DEFENDANT WOOSLEY:  No.
5            THE COURT:  Prior to being arrested in this case
6   were you employed?
7            DEFENDANT WOOSLEY:  Yes.
8            THE COURT:  All right.  Can you tell me
9   generally the kind of work you've been able to do?
10            DEFENDANT WOOSLEY:  For 15 years I worked at a
11   rock quarry called Boonesboro Quarry, and in around
12   October we parted ways and then did some odd jobs.
13            And I finally started working full time at KDMK
14   in Montgomery County.
15            THE COURT:  Okay.
16            DEFENDANT WOOSLEY:  I was there six, seven weeks
17   before this happened.
18            THE COURT:  What is KDMK?
19            DEFENDANT WOOSLEY:  It's a manufacturing company
20   that makes fuel pumps --
21            THE COURT:  All right.
22            DEFENDANT WOOSLEY:  -- for cars.
23            THE COURT:  All right.  All right.  Thank you.
24            Let me ask Mr. Inman just a couple of
25   questions.

1          Mr. Inman, have you had any problems

2   communicating with Mr. Woosley in the case?

3          MR. INMAN:  No, Your Honor.

4          THE COURT:  Do you have any reason to believe

5   that he does not understand the nature of the charges that

6   have been made in this matter?

7          MR. INMAN:  No, Your Honor.

8          THE COURT:  Do you have any reason to believe

9   that he's impaired such that he could not proceed here

10   this afternoon with a guilty plea in accordance with his

11   written plea agreement?

12          MR. INMAN:  No, Your Honor.

13          THE COURT:  All right.  Thank you.

14          Mr. Woosley, let me confirm that you've

15   received a copy of the indictment in the case.  Is that

16   correct?

17          DEFENDANT WOOSLEY:  Yes, sir.

18          THE COURT:  Have you had the opportunity to

19   review the indictment and also to discuss it with your

20   attorney?

21          DEFENDANT WOOSLEY:  Yes, sir.

22          THE COURT:  Have you discussed not only the

23   charges against you but the case in general with

24   Mr. Inman?

25          MR. INMAN:  Yes, sir.

1          THE COURT:  Do you feel like you understand the

2   charges?

3          MR. INMAN:  Yes, sir.

4          THE COURT:  Are you satisfied with the advice

5   and the representation that Mr. Inman has given you to

6   this point in the case?

7          MR. INMAN:  Yes, sir.

8          THE COURT:  All right.  And is there a signed

9   plea agreement, Mr. Inman?

10         MR. INMAN:  Yes, Your Honor.

11         THE COURT:  If you would pass that up, please,

12   along with any supplement.

13         Thank you.

14         Mr. Woosley, I have been given your written plea

15   agreement, together with the supplement to the plea

16   agreement.  The plea agreement itself is a 10-page

17   document, and on the last page it has the attorneys'

18   signatures, and it also appears to have your signature,

19   dated on Wednesday of this week, May the 8th, and those

20   same signatures appear on the supplement to the plea

21   agreement, but it appears that you signed the supplement

22   today.

23         DEFENDANT WOOSLEY:  Yes, sir.

24         THE COURT:  Now, let me first confirm that this

25   is your signature on both documents and that you signed

1   both documents on the dates that are indicated.

2           Is that correct?

3           DEFENDANT WOOSLEY:  Yes, sir.

4           THE COURT:  Before signing these documents did

5   you have the opportunity to review each one?

6           DEFENDANT WOOSLEY:  Yes, sir.

7           THE COURT:  And did you discuss the documents

8   with your attorney?

9           DEFENDANT WOOSLEY:  Yes, sir.

10          THE COURT:  Do you feel like you understand the

11  terms and the conditions of your plea agreement, as well

12  as the supplement to the plea agreement?

13          DEFENDANT WOOSLEY:  Yes, sir.

14          THE COURT:  If I take these two documents

15  together, the plea agreement and the supplement, do they

16  represent the only agreement that you have with the

17  government in the case?

18          DEFENDANT WOOSLEY:  Yes, sir.

19          THE COURT:  All right.  Mr. Woosley, in just a

20  moment I'm going to ask Mr. Marye on behalf of the

21  government to review the essential parts of your plea

22  agreement.  I'm not going to ask him to read it line by

23  line.  I'm going to ask him to summarize it for us.

24          As he does that, I would like for you to listen

25  carefully, because when he finishes the practice I follow

1   is to first ask your attorney if he's accurately

2   summarized it.  Then I'll ask you that same question.  So

3   if you could, please listen carefully as he does that.

4          Mr. Marye.

5          MR MARYE:  Yes, Your Honor.

6          Mr. Woosley has agreed to enter a guilty plea

7   to Count 2 of the indictment, which charges him with

8   violating 18 Section 2251(a), commonly referred to as

9   production of child pornography.

10          He will also admit to the forfeiture allegation

11  contained in the indictment.

12          The United States has agreed to move the Court

13  at sentencing to dismiss Counts 1 and 3 through 6.

14          Count 1 is a similar count to what Count 2 is,

15  or similar offense.

16          Count 3 is distribution of such visual

17  depictions.

18          Counts 4 and 5 were receipt of such visual

19  depictions.

20          And Count 6 is charging knowingly possessing

21  such visual depictions.

22          Paragraph 2 sets out the essential elements of

23  the offense to which Mr. Woosley is pleading guilty.

24          And in paragraph 3 we have set out facts, which

25  establish the essential elements of the offense beyond a

1  reasonable doubt, and he admits to those facts.

2         Paragraph 4 sets out the statutory punishment

3  for the offense, which is not less than 15 years, no more

4  than 30 years, a fine of not more than $250,000, and a

5  term of supervised release of not less than five years

6  and up to life.

7         There is a mandatory special assessment of

8  $100, and there's an additional mandatory special

9  assessment of $5,000, which applies for non-indigent --

10  excuse me, non-indigent defendants convicted of certain

11  offenses, including this offense, which were committed

12  after May 29th, 2015, through September 30 of 2019.  And,

13  again, that would be up to the Court whether to order

14  that assessment or not at sentencing.

15         In paragraph 5 the parties have set out what we

16  believe to be the applicable sentencing guideline

17  calculations, but we recognize this is only a

18  recommendation to the Court and does not bind the Court.

19         Count -- or, excuse me, paragraph 6, there's no

20  agreement as to his criminal history category.

21         In paragraph 7 he agrees to not file a motion

22  for a decrease in the offense level based on mitigating

23  role.

24         And paragraph 8 he has waived the right to

25  appeal his guilty plea and conviction.  However, he asked

1   to retain the right to appeal the sentence.

2            And except for claims of ineffective assistance

3   of counsel, he's waived the right to attack collaterally

4   the guilty plea, conviction, and sentence.

5            He also agreed to forfeit to the United States

6   all his interest in the property listed in the forfeiture

7   allegation of the indictment.

8            And this is a little unusual.  Paragraph 9

9   states, "except for item number 2."  And he believes that

10  there was no contraband images found on that particular

11  item, and I have asked the forensic people to

12  double-check that, and we will know that for certain by

13  the time of sentencing.

14            THE COURT:  All right.  So that part is

15  perhaps -- that is contested at this point?

16            MR MARYE:  Yes, sir.

17            THE COURT:  All right.

18            MR MARYE:  And he agrees that there's a nexus

19  between the property and criminal violation, again, except

20  for item number 2.

21            He understands that he will be required to

22  register as a sex offender upon his release from prison as

23  a condition of any supervised -- of his supervised

24  release.

25            Those are the essential terms of the plea

1  agreement.

2           THE COURT:  All right.  All right.  Thank you,

3  Mr. Marye.

4           Mr. Inman, did Mr. Marye accurately summarize

5  the essential parts of the plea agreement?

6           MR. INMAN:  Yes, Your Honor.

7           THE COURT:  Mr. Woosley, were you able to hear

8  Mr. Marye as he was going through your plea agreement?

9           DEFENDANT WOOSLEY:  Yes, sir.

10           THE COURT:  Did he accurately summarize it as

11  you understand it?

12           DEFENDANT WOOSLEY:  Yes.

13           THE COURT:  Other than what's contained in the

14  plea agreement and the supplement, have there been any

15  other promises made to you by anyone that have caused you

16  either to sign these documents or to indicate that you

17  wish to enter a guilty plea?

18           DEFENDANT WOOSLEY:  No, sir.

19           THE COURT:  Has anyone made any threats or in

20  any way forced you either to sign these documents or to

21  enter a guilty plea in the case?

22           DEFENDANT WOOSLEY:  No, sir.

23           THE COURT:  And do you understand that if I

24  accept a plea of guilty from you, according to your plea

25  agreement, you would be adjudged guilty of the charge

1   that's contained in Count 2 of the indictment, and you

2   would lose certain valuable civil rights that you may

3   have, including the right to vote, the right to hold

4   public office, the right to serve on a jury, and also the

5   right to possess a firearm or any type of a dangerous

6   weapon?

7           You do understand that?

8           DEFENDANT WOOSLEY:  Yes, sir.

9           THE COURT:  The statutory penalties are

10  accurately set forth in your plea agreement in

11  paragraph 4.  The statutory penalties are the maximum

12  penalties that may be imposed by law.

13          As outlined in paragraph 4, the statutory

14  punishment for what is charged in Count 2 of the

15  indictment would be a term of incarceration of not less

16  than 15 years.  In other words, it's a mandatory minimum

17  term that would have to be imposed unless there would be

18  an exception to that mandatory minimum term.  So it's not

19  less than 15 years, and it could extend up to 30 years.

20  That's the maximum period of incarceration.

21          The Court could also impose a fine in the case.

22  That's capped at $250,000.

23          And there would be a term of supervised

24  release.  There's a minimum term of supervision in the

25  case of not less than five years, but the Court could

1  impose up to a life period of supervision if it were

2  warranted in the case.

3            And there would be the potential of two

4  assessments.

5            The first assessment would be $100 assessment

6  by statute, and that would be due at the time of entry of

7  your plea.

8            You may also be responsible for payment of a

9  second assessment of $5,000 under Title 18, Section 3014,

10 and that would apply unless you were found to be indigent

11 or unable to pay that assessment, as that term is defined

12 in the statute.

13            And if it's determined that you are eligible

14 for that assessment, then that would be due at the time

15 of the sentencing hearing in accordance with the

16 judgment -- or, excuse me, after the sentencing hearing

17 in accordance with the judgment.

18            And you do understand that those are the

19 potential penalties in the case; is that correct?

20            DEFENDANT WOOSLEY:  Yes, sir.

21            THE COURT:  Do you also understand that you

22 could receive additional penalties, including additional

23 jail time, if you were to be in violation of any condition

24 of supervision?  You understand that?

25            DEFENDANT WOOSLEY:  Yes.

1          THE COURT:  So if you were to violate a

2    condition of supervised release, you could receive an

3    additional penalty for such a violation?

4          DEFENDANT WOOSLEY:  Yes, sir.

5          THE COURT:  All right.  The maximum period of

6    incarceration for a supervised release violation is

7    three years, but the Court also has the option of

8    reimposing supervision for the term that could have been

9    imposed originally.  And because there's a minimum term

10   and no upper limit for supervision, if there were to be a

11   violation, the Court again would have the option of

12   imposing up to a life period of supervision in the case.

13          Now, let me talk with you for just a moment

14   about some of the factors that would be considered in

15   imposing a sentence in your case.

16          I want to begin by discussing the sentencing

17   guidelines, but I also want to talk to you about -- or

18   talk with you about some statutory factors.  So let me

19   begin with the guidelines.

20          Let me begin by explaining that the guidelines

21   are subject to any mandatory minimum term that would be

22   required by statute.  In other words, a guideline range

23   may be calculated and determined to be lower than a

24   mandatory minimum.  In that case the mandatory minimum

25   would trump that and would still require that the Court

 1   impose at least a minimum term of incarceration.  In this

 2   case that would be 15 years minimum.

 3           But the Court will consider the guidelines as

 4   one factor in determining an appropriate sentence.

 5           The -- the sentencing guidelines are based upon

 6   two primary factors.

 7           First would be the offense level for the crime

 8   that's been charged, together with any adjustments that

 9   might apply.

10           And, second, the Court would consider the

11   criminal history.

12           Those two factors are taken together, and they

13   determine what's called a guideline range.  I find out

14   about those factors and about the guideline range from a

15   presentence report.  That's a report that will be

16   prepared by the probation officer that's been assigned to

17   your case.

18           After the report has been prepared, it will be

19   shown to you and, of course, to your attorney, and to the

20   attorney for the United States.  You will all have the

21   opportunity to review the report, and through your

22   attorney you'll be able to file objections to anything

23   that you might disagree with.

24           I would need to resolve any objection before we

25   could proceed with the sentencing hearing.

1          But do you understand that until that process

2   takes place, it would be impossible for the Court, or for

3   your attorney, to know exactly what the guideline range

4   would be in your case?

5          DEFENDANT WOOSLEY:  Yes, sir.

6          THE COURT:  All right.  Now, one factor that

7   Courts may consider in determining an appropriate sentence

8   under the guidelines, the guidelines allow for the Court

9   to consider any cooperation in the investigation or

10  prosecution of others.  It's called a 5K motion sometimes.

11         The only thing I -- or the only reason I want

12  to mention that to you is really two purposes.  It can

13  allow the Court to impose a sentence below the mandatory

14  minimum if a motion is made by the government.  But also

15  unless the motion is made by the government, the Court

16  would be obligated to impose at least a mandatory minimum

17  sentence in the case.  In other words, I can't raise that

18  on my own.  It would have to be raised by a motion filed

19  by the government.

20         And has that been explained to you?

21         DEFENDANT WOOSLEY:  Yes, sir.

22         THE COURT:  All right.  Now, in addition to the

23  sentencing guidelines, District Courts consider a number

24  of statutory factors in imposing sentences, and they're

25  contained in Title 18 of the United States Code,

1   Section 3553.

2           Those factors include the nature and

3   circumstances of the offense, the history and the

4   characteristics of the person that's to be sentenced, the

5   need for the sentence to reflect the seriousness of the

6   offense, the need to promote respect for the law, and

7   provide a just punishment for the offense.

8           And then the Court will also consider the

9   deterrent affect that the sentence would have and whether

10  there's a need to protect the public from any future

11  crimes of the defendant.

12          Also, the Court will consider whether a

13  particular defendant needs any type of educational or

14  vocational training, any medical care or treatment, or

15  treatment for any addictions that might be present, such

16  as an addiction to drugs or alcohol.

17          And those factors may all be taken into account

18  in determining the sentence and also in determining

19  appropriate conditions of supervision.

20          For example, if a person has an addiction to

21  alcohol, that person may be required to undergo substance

22  abuse treatment as a condition of supervision, and the

23  failure to attend treatment could be a violation of

24  supervision.  It could result in additional penalties

25  being imposed.

1          And you understand that; correct?

2          DEFENDANT WOOSLEY:  Yes, sir.

3          THE COURT:  All right.  Let me turn back to your

4   plea agreement.  I want to go through the language that is

5   contained in paragraph 7 and 8.

6          In paragraph 7 you've agreed that you would not

7   file a motion for a decrease in the offense level based

8   on what's called a mitigating role under the guidelines

9   at Section 3B1.2.

10          And then in the next paragraph, you have waived

11   the right to appeal the guilty plea and the conviction.

12   In other words, you couldn't take a direct appeal to

13   challenge either the guilty plea or the conviction.

14          But you could challenge the sentence.  You're

15   specifically reserving the right to take an appeal to

16   challenge the sentence or the manner in which the

17   sentence is calculated and applied in your case, but you

18   have to do so timely.

19          In other words, you would have to file a notice

20   of appeal within 14 days from the date that the judgment

21   is entered for any notice of appeal to be timely if you

22   seek to challenge the sentence.

23          Has that been explained to you?

24          DEFENDANT WOOSLEY:  Everything but the 14 days,

25   sir.

1        THE COURT:  All right.  And that you do

2   understand at this point that you have a limited time to

3   take an appeal following entry of the judgment; is that

4   correct?

5        DEFENDANT WOOSLEY:  Yes, sir.

6        THE COURT:  All right.  The last part of

7   paragraph 8 affects your ability to collaterally attack

8   the guilty plea, the conviction, and the sentence.

9        When you give up the right to collaterally

10  attack, as it's used in this paragraph, you're giving up

11  the right to file a separate lawsuit or a separate motion

12  to challenge it.  Sometimes that's referred to as a

13  habeas motion or a habeas proceeding.

14        And with one exception you would not be able to

15  collaterally attack the guilty plea, the conviction, or

16  the sentence.

17        The exception would be a claim of ineffective

18  assistance of counsel.  You could make that claim in a

19  habeas proceeding or collateral proceeding, but you would

20  be limited to that claim.

21        And has that been explained to you?

22        DEFENDANT WOOSLEY:  Yes, sir.

23        THE COURT:  Now, as we discussed, you would be

24  able to appeal the sentence if you chose to do so.  You

25  would have to do so timely, as we have discussed, but you

1    would not be able to withdraw your guilty plea, and you

2    would not be able to withdraw from your plea agreement if,

3    for example, your attorney's prediction or your belief

4    about your guideline range were to be incorrect.  In other

5    words, that wouldn't be a reason to withdraw from the plea

6    agreement or seek to withdraw your guilty plea.

7         Also, if the sentence that's imposed in your

8    case would be more severe than you expect, again, you

9    could appeal the sentence, but as long as the Court

10   enters a legal sentence, that wouldn't be a reason to

11   withdraw from your guilty plea or seek to withdraw from

12   the plea agreement.

13        And you understand that also?

14        DEFENDANT WOOSLEY:  Yes, sir.

15        THE COURT:  And then finally along these lines

16   if you are sentenced to term of incarceration, you would

17   not be released on parole because parole has been

18   abolished in the federal system.

19        Now, let me go back for just a moment, and I

20   want to mention one other thing that I did not mention as

21   I was talking about the guidelines and how the guidelines

22   would be calculated.

23        The parties have made recommendations about how

24   to calculate the guidelines, the sentencing guidelines,

25   in this particular case in the plea agreement.  Those are

1    what's referred to as nonbinding recommendations.  In

2    other words, while I would certainly consider the

3    parties' recommendations about how to calculate the

4    guidelines and determine the guideline range in the case,

5    it would not be binding on me.  I would have to make an

6    independent determination as to the correct calculations

7    of the guidelines.

8            And you understand that?

9            DEFENDANT WOOSLEY:  Yes, sir.

10           THE COURT:  All right.  Now, Mr. Woosley, let me

11   talk with you for just a moment about some of the rights

12   that you'd be giving up by entering a plea of guilty

13   rather than proceeding with a jury trial.

14           Now, before I do that I want to mention to you

15   that if you wanted to continue with a plea of not guilty

16   and proceed to trial, to a jury trial, you could do that.

17   You have a right to a speedy public trial, and any

18   verdict that would be returned would have to be a

19   unanimous decision of a jury composed of 12 persons.

20           But you can waive those rights, and you can

21   enter a guilty plea this afternoon.

22           By doing so, you do waive or give up certain

23   rights, but one right that you don't lose or waive or

24   give up is your right to assistance of counsel.  You have

25   that right at all stages of this proceeding, and you

1   don't lose that right by entering a plea of guilty.

2           You have a right to hire an attorney, but if

3   you can't afford one, an attorney is provided to you at

4   no cost.

5           But as I mentioned, there are some rights that

6   you would waive or give up by entering a plea of guilty

7   rather than proceeding to a jury trial.

8           For example, if the matter proceeded to trial,

9   you would have the right of confrontation, which simply

10  means you would be able to see, hear, and through your

11  attorney cross-examine any witnesses that might testify

12  against you.

13          Of course, if you don't go to trial, you don't

14  have that opportunity.

15          At trial you would also be able to have

16  subpoenas issued to compel witnesses to attend trial and

17  testify on your behalf if you wished to call witnesses.

18          At trial you would have the right to remain

19  silent.  While you can give up that right and testify,

20  you could not be forced to testify.

21          In fact, if you decided to remain silent during

22  trial, the United States couldn't comment on your silence

23  throughout the course of the proceeding.

24          At trial you would be presumed innocent of any

25  charges against you.  Therefore, before you could be

1    convicted of a charge, the United States would have the

2    burden of proving that charge beyond a reasonable doubt,

3    which is the burden of proof that the government has at

4    trial.

5           If I do accept a plea of guilty from you,

6    according to your plea agreement, there would not be a

7    trial, and you would lose or give up the rights that I've

8    just described to you.

9           And you do understand that?

10          DEFENDANT WOOSLEY:  Yes, sir.

11          THE COURT:  Mr. Woosley, at this time what I

12   will do is I'll take a moment to go through Count 2 of the

13   indictment, and also the forfeiture charge.  And then I'll

14   ask you to tell me in your own words what it was that you

15   did to be guilty of that substantive charge.

16          Count 2 alleges that on or about May 22nd, 2018,

17   in Montgomery County, in the Eastern District of Kentucky,

18   that at that time you employed, used, persuaded, induced,

19   enticed, and coerced a minor, who is identified in the

20   indictment as G.W., to engage in sexually explicit conduct

21   for the purpose of producing visual depictions of that

22   conduct, knowing and having reason to know that such

23   visual depictions would be transmitted using a means or a

24   facility of interstate commerce, all in violation of

25   Title 18 of the United States Code, Section 2251(a).  So

1    that's the substantive charge.

2           The forfeiture allegation alleges that in

3    committing the offenses that are charged in the

4    indictment, including the charge contained in Count 2,

5    that you used certain described property to carry out the

6    offense, and that as a result that property should be

7    forfeited to the United States and all interest vested in

8    the United States.

9           Now, there is one exception.  I understand item

10   number 2 that you take issue with.  Now, what I'm going

11   to do is I'm going to go through all of the equipment

12   that's listed with the understanding that you do

13   challenge whether item number 2 was involved in the -- in

14   the matter that would give rise to this indictment.

15          But the equipment that's listed would be a

16   Cricket Alcatel One-Touch, Serial Number 14CEF2D1,

17   model number 60450.

18          The matter that's contested is listed as an

19   Asus Sonic Master laptop computer, Serial Number

20   G1N0GR00101001B, Model Number X540S.

21          The third item listed is an RCA Tablet,

22   Model Number RCT6303W87MT.

23          The fourth item is an AT&T Pantech smartphone,

24   Model Number P9070, Serial Number 120100256467.

25          And the fifth item is all software and

1   peripherals, which are contained on or associated with

2   the listed computers.

3          So if we could, let's go back to Count 2, and

4   I'll ask you at this time if you can tell me in your own

5   words what it was that you did to be guilty of what has

6   been charged in that count.

7          DEFENDANT WOOSLEY:  The reason I'm guilty?

8          THE COURT:  Yes.  What was it you did to be

9   guilty of what has been charged?

10         DEFENDANT WOOSLEY:  I took three pictures, saved

11  them to Dropbox.

12         THE COURT:  Did the -- do the pictures display

13  one or more minors engaged in sexually explicit conduct?

14         DEFENDANT WOOSLEY:  In that one there, it was

15  just G.W.  He was laying on the bed naked.

16         THE COURT:  All right.

17         DEFENDANT WOOSLEY:  And I had a toy, rubbing

18  with it, tickling him.

19         THE COURT:  Did that conduct occur on or about

20  the date that's charged in Count 2 of the indictment?

21         DEFENDANT WOOSLEY:  Sir, I could not answer

22  that --

23         THE COURT:  All right.

24         DEFENDANT WOOSLEY:  -- right offhand.  I would

25  assume so.

1          THE COURT:  Based upon the discovery and other

2    information that has been provided by the government in

3    the case, do you reasonably believe that the conduct

4    that's described in Count 2 occurred on or about that

5    date?

6          DEFENDANT WOOSLEY:  Again, I assume so.

7          THE COURT:  All right.  If the United States

8    were to offer proof to that affect, would you be able to

9    dispute the time period?

10         DEFENDANT WOOSLEY:  No, sir.  As far as I know,

11   they can time stamp the photo, and it should tell you when

12   it is, sir.

13         THE COURT:   All right.  Do you reasonably

14   believe that the time charged in the indictment in Count 2

15   is correct?

16         DEFENDANT WOOSLEY:  Yes, sir.

17         THE COURT:  Did one or more of your actions

18   take place in Montgomery County, which is within the

19   Eastern District of Kentucky?

20         DEFENDANT WOOSLEY:  Yes, sir.

21         THE COURT:  Your plea agreement has a factual

22   summary that's contained in paragraph 3, and it has

23   subparagraphs (a) through (f).

24         I do understand that you've had the opportunity

25   to review that information with your attorney, and so let

 1   me ask you if the information outlined in paragraph 3,

 2   sub-paragraphs (a) through (f) is true and accurate?

 3            DEFENDANT WOOSLEY:  Yes, sir.

 4            THE COURT:  And that would include the

 5   information contained in sub-paragraph (f); correct?

 6            DEFENDANT WOOSLEY:  Yes.

 7            THE COURT:  All right.  Is it your intention to

 8   enter a plea of guilty to what has been charged in Count 2

 9   because you are, in fact, guilty of that charge and for no

10   other reason?

11            DEFENDANT WOOSLEY:  Yes.

12            THE COURT:  If this case were to proceed to a

13   jury trial, the United States would be required to prove

14   certain elements to obtain a conviction, and they would

15   have to prove those elements beyond a reasonable doubt.

16            Those elements are listed in paragraph 2 of the

17   plea agreement, and they are that you employed, used,

18   persuaded, induced, enticed, and coerced the minor

19   identified as the victim in the case to engage in

20   sexually explicit conduct for the purpose of producing a

21   visual depiction of that conduct, and that you knew the

22   visual depictions that you persuaded, induced, enticed,

23   and coerced the minor to create would be transmitted

24   using a means or facility of interstate commerce.

25            If the case were to proceed to trial, do you

1  believe the government could prove those elements beyond

2  a reasonable doubt?

3           DEFENDANT WOOSLEY:  Yes, sir.

4           THE COURT:  All right.  Mr. Marye, in your

5  opinion has a sufficient factual basis been stated for the

6  Court to accept a plea of guilty to Count 2 from the

7  defendant?

8           MR MARYE:  Your Honor, I think so.  I think

9  maybe a little bit of hesitation was that the sexually

10  explicit conduct I think many people who are not familiar

11  with that term in the law, think that there has to be, you

12  know, actual sexual or activity occurring between two

13  persons.  In this particular case, it was the lascivious

14  exhibition of the genitalia of the victim, and he said

15  that the child was naked.  So I think that is sufficient,

16  but I thought I might bring that up and clarify.

17           THE COURT:  All right.  Now, Mr. Inman, do you

18  also agree that a sufficient factual basis has been stated

19  for the Court to accept a guilty plea in the case?

20           MR. INMAN:  Yes, Your Honor.

21           THE COURT:  Let me also confirm with

22  Mr. Woosley.  Other than the item listed as item number 2

23  in the forfeiture allegation, do you also agree to forfeit

24  any interest that you might otherwise assert and the other

25  items that are listed in that allegation?  In other words,

1  do you agree to forfeit any interest in the property

2  listed in the forfeiture allegation other than the second

3  item listed?

4          DEFENDANT WOOSLEY:  Yes, sir.

5          THE COURT:  And do you also understand that the

6  Court will have to make a determination at the time of the

7  sentencing hearing or in a related proceeding to determine

8  if item number 2 should be forfeited as well?  You

9  understand that?

10         DEFENDANT WOOSLEY:  Yes, sir.

11         THE COURT:  All right.  What is your plea to

12  what's charged in Count 2, Mr. Woosley?  What is your

13  plea?

14         DEFENDANT WOOSLEY:  Guilty.

15         THE COURT:  All right.  Well, I am satisfied

16  with the responses that you've given me.  I will make the

17  following findings in your case at this time.

18         It is the finding of this Court in the case of

19  United States versus James E. Woosley, that Mr. Woosley is

20  fully competent and capable of entering an informed plea.

21         Further, his plea of guilty is a knowing and a

22  voluntary plea, which is supported by an independent

23  basis in fact, containing the essential elements of the

24  offense that has been charged in Count 2.

25         His plea, therefore, will be accepted.  He will

1   be adjudged guilty of the offense that is charged in that

2   count and will be required to forfeit any interest that

3   he might otherwise assert in the items that are listed in

4   the forfeiture allegation of the indictment, with the

5   exception of item number 2, and the parties have reserved

6   the right to argue their respective positions regarding

7   forfeiture of that matter, and it will be determined by

8   the Court at a subsequent date.

9          The sentencing hearing will be scheduled for

10  here in Lexington, if counsel will be present on

11  August 23rd.  That's a Friday, at 10:15.

12         Now, Mr. Inman, how does that look on your

13  calendar if you have it with you?

14         MR. INMAN:  That's fine, Your Honor.

15         THE COURT:  All right.  Mr. Marye, how does that

16  look for you?

17         MR MARYE:  Yes, Your Honor, that's fine.

18  Thank you, Judge.

19         THE COURT:  August 23rd, here in Lexington, at

20  10:15 in the morning.

21         Mr. Woosley, I've asked you quite a few

22  questions here this afternoon, and it does appear to me

23  that you've understood my questions, but let me make sure

24  that's the case.

25         Is there anything that I asked you and you

1   really weren't sure what I was asking, but you went ahead
2   and answered, either out of courtesy or for some other
3   reason?
4           DEFENDANT WOOSLEY:  My lawyer told me exactly
5   what they were so I pretty much understood what --
6           THE COURT:  The questions that I would be going
7   over with you?
8           DEFENDANT WOOSLEY:  Yes.
9           THE COURT:  All right.  Did I surprise you with
10  anything that you -- I want to make sure that you
11  understood all of my questions and that you weren't
12  surprised with anything that I asked.
13          DEFENDANT WOOSLEY:  No, I wasn't surprised.  You
14  just -- when you worded it, it was a little confusing,
15  but you --
16          THE COURT:  I'm sorry.
17          DEFENDANT WOOSLEY:  -- went back over it.
18          THE COURT:  All right.  Well, I apologize for
19  that.  Is there anything I need to clarify for you?
20          DEFENDANT WOOSLEY:  Not that I know of, sir.
21          THE COURT:  Okay.  All right.  Well, I will
22  provide the sentencing order and the plea agreement to the
23  clerk, and I will return the supplement to the plea
24  agreement to the United States to maintain in its records.
25          MR MARYE:  Thank you.

1          THE COURT:  All right.  Mr. Woosley, you will

2    need to meet with the probation officer that's been

3    assigned to prepare your presentence report.  You are

4    entitled to have counsel present as you meet with

5    probation.

6          It's always a good idea for you to have your

7    attorney present for that meeting.  Mr. Inman may be able

8    to point some things out in your favor that you don't

9    think of, or you don't think of as being important when

10   they could be.

11         And I do want to make sure you understand that

12   you can have counsel present as you meet with probation,

13   and you do understand that; correct?

14         DEFENDANT WOOSLEY:  Yes.  I assume my attorney

15   will get with him and --

16         THE COURT:  Yes.

17         DEFENDANT WOOSLEY:  -- set a date?

18         THE COURT:  Yes, yes.  The sentencing order that

19   I have just given to the clerk will have certain dates,

20   which various things need to be accomplished, including

21   scheduling a meeting with the probation officer, and he

22   will keep you updated on those -- on those matters.

23         All right?

24         DEFENDANT WOOSLEY:  Thank you.

25         THE COURT:  Let's see if we have any other

1    issues to take up in the case.

2              Mr. Marye, anything else?

3              MR MARYE:  No, not on behalf of the

4    United States, no, Your Honor.

5              THE COURT:  Mr. Inman, anything else?

6              MR. INMAN:  No, Your Honor.

7              THE COURT:  All right.  Thank you.

8              I believe our next hearing is at 2:15.  We will

9    be in recess until that time.

10              Thank you.

11         (Whereupon, the Rearraignment Hearing proceedings

12    concluded at 2:10 p.m.)

13                    C E R T I F I C A T E

14         I, Peggy W. Weber, certify that the foregoing is a

15    correct transcript from the record of proceedings in the

16    above-entitled matter.

17

18    May 4, 2020_____          s/Peggy W. Weber_____

19       DATE                      PEGGY W. WEBER, RPR

20

21

22

23

24

25